58 N.J. Super. 522 (1959)
156 A.2d 732
ANTHONY AND JOSEPHINE AUCIELLO, HUSBAND AND WIFE, ET AL., PLAINTIFFS-APPELLANTS,
v.
JOSEPH E. STAUFFER, AND THE CITY OF JERSEY CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, IN THE COUNTY OF HUDSON, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 1959.
Decided December 22, 1959.
*524 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Victor P. Mullica argued the cause for plaintiffs-appellants.
Mr. Theodore Rabinowitz argued the cause for defendant-respondent Joseph E. Stauffer (Mr. Philip Tulipan, attorney).
Mr. Ezra L. Nolan filed a brief for defendant-respondent City of Jersey City (Mr. Joseph W. Tumulty, attorney).
*525 The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiffs sue to enjoin the defendant Stauffer from violating the zoning ordinance of the City of Jersey City and for a mandatory injunction against the defendant municipality to compel Stauffer to comply with the ordinance. Plaintiffs number some 43 property owners and residents in the immediate vicinity of an auto wrecking and used car sales business which defendant conducts on Trenton and Elizabeth Streets and Waldo Avenue in Jersey City. The action was dismissed after trial on grounds of laches.
The property in question is in a second residential zone under the Jersey City zoning ordinance, which was adopted in 1931. In such a zone business or commercial operations of any kind are expressly prohibited. Defendant relies for the legality of his use as to part of the property, the Trenton Street lots, upon an alleged continuous nonconforming use begun by his father in the 1920's; and, as to all of it, upon use and building permits directed to be issued to him by the Jersey City Board of Adjustment in 1952 and 1955. The present action was instituted May 29, 1958.
The claim of prior nonconforming use was held not probatively established by the trial judge and we think he was clearly right as to this. We pass to consideration of the permits authorized by the board of adjustment.
In October 1951 defendant through a lawyer applied to the Jersey City Superintendent of Buildings for a permit to conduct an "auto wrecking lot" on vacant land on Trenton Street. This property had been purchased from the city by defendant in 1948. The application was promptly denied in writing as contrary to the zoning ordinance. Thereupon the lawyer wrote to the same official requesting reconsideration of the application and pleading considerations relative to the special needs of the applicant and the compatibility of the proposed business with the character of the vicinity, of the type frequently found in appeals to boards of adjustment for zoning variances under N.J.S.A. 40:55-39. A *526 fairly prompt response was received, but from the chairman of the board of adjustment rather than the superintendent of buildings, advising defendant's counsel that the board had no jurisdiction unless there was a public hearing. Information was given as to the regular hearing days of the board and concerning the time for filing such a request. On January 4, 1952, over two months later, the attorney wrote to the chairman of the board requesting a "reconsideration of the rejection of the application" and repeating the same kind of grounds as had been addressed to the building superintendent in October 1951. On April 4, 1952 the chairman of the board wrote the superintendent of buildings referring to this application, mentioning the proximity of commercial and light industrial uses and absence of objection from adjacent property owners, and stating that "it is the opinion of this Board that there is no need of a public hearing." The superintendent was directed to issue the requested permit forthwith, and this was done.
On February 11, 1955 defendant applied to the superintendent of buildings for a permit to erect a 24 by 50 foot garage on the Trenton Street property to be used as a "garage for tenants in adjoining property and storage space." This was denied February 23, 1955 as violative of the zoning ordinance, and the superintendent of buildings advised that if the applicant desired to appeal the decision, he could do so by submitting a letter so stating in duplicate to him. Thereupon he would forward the plan and application to the board of adjustment for its action. On February 25, 1955 the chairman of the board of adjustment wrote the building superintendent that in view of the nearby commercial uses on the street the type of garage building proposed would not "change the character of the street" and "therefore needs no public hearing." The permit was directed to be issued, and it was.
The third permit involved grew out of an application by defendant to the building superintendent September 16, 1955 to conduct a used car lot on the Waldo Avenue and Elizabeth *527 Street lots. As in the other instances, this was denied by that official as in violation of the zoning ordinance but granted under authority of the acting chairman of the board of adjustment with the observation that "a public hearing is not necessary."
Construction of the garage was a slow affair. It was not begun for some time after the application was granted. All of the labor was by the defendant, his father and brother. It was estimated by different witnesses to have been from one-fifth to one-half completed when this action was instituted. At time of trial it was still not quite completed. Defendant and his father testified construction of the building will have cost them almost $3,000 when completed. The only other installations by defendant on the property prior to the institution of this action were the construction of a scrap metal fence and some ash fill in depressed portions of the lots. The garage was never used for "tenants in adjoining property," as represented in the application, but for wrecking of cars and storage.
The permits issued to defendant were utterly void. There was no pretense of regularity in the actions of the officers of the board of adjustment in directing the issuance of permits for uses violative of the zoning ordinance, and declared to be such by the responsible building official. The board of adjustment is a statutory, quasi-judicial body whose powers and jurisdiction are specified and strictly delimited by N.J.S.A. 40:55-39. Dolan v. De Capua, 16 N.J. 599, 612 (1954). None of its authorized powers may be exercised except after public hearing, and upon at least ten (formerly five) days' personal notice to all owners of property within 200 feet of the property in question. N.J.S.A. 40:55-44. Here there was not only an inexcusable dispensation with notice and hearing, but even a by-passing of the governing body of the municipality, which is required to approve a recommendation of variance by the board of adjustment for a use in a district restricted against it. N.J.S.A. 40:55-39, subd. d. In such a situation, the strictures of *528 Mr. Justice Heher in reference to a comparably void arrogation by a board of adjustment of power wholly beyond the statutory purview, in V.F. Zahodiakin Engineering Corp. v. Zoning Bd. of Adjustment of City of Summit, 8 N.J. 386, 395 (1952), are fully applicable. It was there said:
"Here, the action taken was not a mere irregular exercise of the quasi-judicial function residing in the local authority. The proceeding was wholly beyond the statute. It was not designed to advance the statutory policy, but to effectuate a contractual undertaking for private benefit in disregard of it. It constituted an arrogation of authority in defiance of the statute and the ordinance. * * * There was no pretense of the exercise of the statutory function. Whim and caprice rather than the reason and spirit of the statute determined the course taken. There was a deliberate breach of jurisdiction. The proceeding did not constitute a judicial inquiry and adjudication within the frame of the statute. * * *"
The court went on to say (8 N.J., at page 395) that:
"Thus, for want of jurisdiction of the subject matter, the resolution purporting to authorize the exception was utterly void and subject to collateral attack at any time as well as a direct review within the time prescribed by law. * * *"
The present action being one in equity to compel compliance with the zoning ordinance, and the attack upon the use and building permits consequently collateral, rather than direct, plaintiffs were thus free to bring it at any time. Compare the direct attacks upon official action by the actions in lieu of prerogative writs in Marini v. Borough of Wanaque, 37 N.J. Super. 32 (App. Div. 1955), and Schultze v. Wilson, 54 N.J. Super. 309 (App. Div. 1959), certification denied 29 N.J. 511 (1959); but see Garrou v. Teaneck Tryon Co., 11 N.J. 294 (1953), where an equitable claim for injunction was joined with a count in lieu of prerogative writs.
Nevertheless, we are required to consider whether the defense of laches was properly applied by the trial court to bar this action since, in principle, laches is invocable to *529 bar any action of an equitable nature no matter what the degree of illegality of the conduct of the defendants sought to be enjoined. In this regard, however, it is entirely appropriate to weigh the nature and degree of the illegality of the activity complained of since such factors clearly bear upon the over-all equities of the situation, and the application of the defense of laches is peculiarly dependent upon considerations of equity. 2 Pomeroy's Equity Jurisprudence (5th ed. 1941), § 419c., p. 175, § 419d., p. 177; see Pierce v. International Telephone & Telegraph Corp., 147 F. Supp. 934 (D.C.N.J. 1957). Cf. Bookman v. R.J. Reynolds Tobacco Co., 138 N.J. Eq. 312, 406 (Ch. 1946), to the effect that: "It is the rule that the defense of laches depends upon the circumstances of each particular case. Where it would be unfair to permit a stale claim to be asserted, the doctrine applies. Where a gross fraud has been perpetrated, the court is hesitant to relieve the wrong-doer on the ground of laches."
As we have indicated, the unceremonious overruling of the building superintendent in this case on three occasions was a grossly unwarranted arrogation of authority by the zoning board officials. Defendant must assume a full share of responsibility for this since it was done at his express instance and request, and through the medium of his legal counsel, who must be taken to have been fully aware of the circumvention of the statutory requisites of notice and hearing for the benefit of persons within 200 feet of the premises (including 33 of these plaintiffs) and approval of any resulting recommendation for variance by the governing body. As was said in the Zahodiakin case, supra, "The governmental zoning power may not be forfeited by the action of local officers in disregard of the statute and the ordinance. The public has an interest in zoning that cannot thus be set at nought. The plaintiff landowner is presumed to have known of the invalidity of the exception and to have acted at his peril" (8 N.J., at page 396). The repeated taking advantage by defendant of a procedure *530 which left plaintiffs ignorant of the fact that variances from the zoning ordinance were in effect being given the defendant is directly related to the inequity of applying laches here. It seems highly probable that, had the statutory notices been duly given, these plaintiffs, or some of them, who were continuously being discommoded by annoyances attendant upon defendant's business, might have appeared and been heard in opposition before the board, without the expense and trouble of institution of legal proceedings, and avoiding the occasion for the commencement of such an action as this.
The principal element in applying laches is not so much the period of delay in bringing action but the factor of resulting prejudice to the defendant. 2 Pomeroy, op. cit., supra, § 419d., p. 177. West Jersey Title and Guaranty Co. v. Industrial Trust Co., 27 N.J. 144, 153 (1958). There is no substantial element of prejudice to the defendant here, at least as contrasted with the heavy weight of the equities against him referred to. Improvements of the property prior to the bringing of this action, aside from the erection of the garage, were inconsequential. Most of the garage was built after this action was commenced, and, to that extent, defendant was of course under notice of the asserted illegality of his position and continued his construction of the building at his peril.
While perhaps not controlling in other circumstances we here have the factor that plaintiffs are obviously people of moderate circumstances and limited awareness of zoning technicalities and remedies, to whom the engagement of a lawyer and the bringing of an action at law is an unusual and burdensome undertaking. See Garrou v. Teaneck Tryon Co., supra (11 N.J., at page 307). They complained informally to municipal officials and political figures concerning defendant's operations on Trenton Street some time before they began this action. The Elizabeth Street and Waldo Avenue use did not commence until 1955 or 1956 and was insignificant in the beginning. *531 Plaintiffs were more acutely alerted to their legal rights when the applicants for a permit to build a nearby warehouse served them with notice thereof. Thereupon they organized, circulated petitions of protest against defendant and finally instituted this action in May 1958. It affirmatively appeared, moreover, that some of these plaintiffs did not acquire their properties until between 1954 and 1957. Laches is an affirmative equitable defense, R.R. 4:8-3, and defendant has not shown that all of the other plaintiffs acquired their respective properties and, consequently, their interest or status for bringing this action at an unreasonably remote date before the institution thereof. The laches, if any, of some would not impair the rights of those plaintiffs free of the defense.
Finally, as emphasized by Mr. Justice Jacobs in the Garrou case, supra, where there is a clear violation of a zoning ordinance, a neighboring taxpayer's action "to eliminate the unlawful use serves not only his private interests but those of the entire community as well and, under such circumstances, the equitable doctrine of laches should be hesitatingly invoked" (11 N.J., at page 307). Defendant's reliance upon Marini v. Borough of Wanaque and Schultze v. Wilson, both supra, is misplaced. Insofar as those decisions involved the doctrine of laches, the balance of the equities in each was quite different from that disclosed by the factual picture here, particularly in respect to the degree of illegality of the course of conduct by defendants. Both of those cases involved mere irregularities rather than the absolute nullity presented by the official action here.
If defendant has any proper grievance in respect to the character of the neighborhood as reflecting upon the appropriate use of his property, it is by way of a proper proceeding before the board of adjustment.
Judgment reversed. The cause is remanded for the entry of judgment effecting the relief sued for by the plaintiffs. Costs to go only against the defendant Stauffer.