256 N.J. Super. 502 (1991)
607 A.2d 685
EUGENE A. ENFIELD, SR. AND ADA A. ENFIELD, PLAINTIFFS,
v.
FWL, INC. AND FUREY W. LERRO, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Cape May County.
Decided March 14, 1991.
*506 Charles Rusen, Jr. for plaintiffs (Collins Toner & Rusen, attorneys).
*507 Dorothy F. McCrosson for defendants (Office of Michael A. Fusco).
CALLINAN, J.S.C.
The issue before the court is whether the remedy of rescission of a contract for the failure of the developer to provide to the buyers of a condominium unit a Public Offering Statement as required by N.J.S.A. 45:22A-26(a)(2) is compulsory under N.J.S.A. 45:22A-21 et seq. "The Planned Real Estate Development Full Disclosure Act". The court, recognizing that rescission is an enunciated remedy under New Jersey law in specific instances, holds that rescission is neither mandated by the statute, nor the appropriate remedy under the facts in the instant case. The unjustified and unexplained passage of time that transpired before initiating suit, together with the statutory bias toward money damages, bars rescission here. The appropriate remedy would be to award double damages to successful plaintiffs pursuant to N.J.S.A. 45:22A-37(a) for failure to provide a Public Offering Statement in violation of N.J.S.A. 45:22A-26(a)(2). The critical question, however, in the instant matter is whether plaintiffs' action for statutory damages other than rescission is barred by laches. This court holds that plaintiffs are not precluded.
The plaintiffs, Eugene A. Enfield, Sr. and Ada A. Enfield, husband and wife, are the contract purchasers of Unit # 210 of the Four Winds Condominium located in Wildwood Crest, New Jersey. The defendants are FWL, Inc., a New Jersey Corporation which is the developer of the Four Winds Condominium and Mr. Furey W. Lerro, president secretary, sole director and registered agent of FWL, Inc.
The transaction, which is the basis for this lawsuit, began with a visit by the plaintiffs to the condominium site in May of 1986, at which time plaintiffs inspected the property. Upon returning to their home located in Edison, New Jersey, the plaintiffs agreed, by telephone, to purchase the subject unit for *508 $68,000.00. Defendants-sellers took back a purchase money mortgage in the amount of $61,000.00. The entire transaction, including the closing which took place on July 10, 1986, was conducted by telephone or through the mail.
At the time this action was initiated plaintiffs had paid a total of $30,112.61 through December 31, 1989 in connection with unit # 210 representing the downpayment, closing fees, payments on the mortgage and carrying expenses. The unit or what is locally described as a "condotel unit" was advertised and sold by defendants as an investment property. After purchase, the unit was owned and maintained by plaintiffs as an investment property and reported on plaintiffs' Federal Income tax returns as a depreciable asset of a business called "E & A" Rentals. (The $30,112.61 in expenditure previously referred to represents net loss after deducting income.) Although the defendants have not conceded this sum, they are unable to contest the amount. This total would be a proper element of damages to be considered in the event the proofs support the thesis that plaintiffs losses were occasioned by the violation of statute. That connection, however, was not established.
It is clear that plaintiffs intended both to use the unit for residential purposes and to rent it out to others at times when they were not using it themselves. They did this in order to defray the costs of this shore property second home. It is easy to conclude that the property was not intended nor operated as a profit-making venture. Some unit owners don't rent at all. It's a matter of preference.
Defendants question whether the Act even applies to plaintiffs' unit. "Unit" as defined in the Act is "any apartment or structure intended primarily as a residence." (emphasis supplied.) N.J.S.A. 45:22A-2(c). The definition requires the unit to be used "primarily as a residence." The unit was used by both plaintiffs and renters as a residence. The fact that the unit was rented does not result in it losing its character as a *509 residence. The Act does not speak to the use of the unit as a "primary" residence and being a consumer protection statute, it should not be so narrowly construed.
During the fall of 1988, plaintiffs discovered they were entitled to receive a Public Offering Statement detailing the terms and conditions of ownership of a Four Winds condominium unit. The complaint initiating this action was not filed until one year later on November 6, 1989. The developer, it appears, had retained a unit for himself which unit the plaintiffs had thought to be a "manager's office". Plaintiffs main complaint is that the failure to inform the plaintiffs that the manager's office of the condotel was not a common element is a material nondisclosure and they now seek to rescind the contract. Pursuant to N.J.A.C. 5:26-6.6(a)(7), plaintiffs claim they have the absolute right to rescind the agreement, as well as the right to double damages and attorney's fees.
The body of law governing the sales of condominium units within the State of New Jersey is N.J.S.A. 45:22A-21, et seq., cited as "The Planned Real Estate Development Full Disclosure Act" (hereinafter referred to as "the Act"). The specific provision of the Act relevant here is N.J.S.A. 45:22A-26(a)(2), which provides:
No developer may dispose of any lot, parcel, unit or interest in a planned real estate development, unless he ... delivers to the purchaser a current public offering statement, on or before the contract date of such disposition.
N.J.S.A. 45:22A-28, together with the Administrative Code, N.J.A.C. 5.26-4.2 and N.J.A.C. 5.26-9.1, enumerates the information which must be contained in the Public Offering Statement to fairly apprise the prospective purchaser "of the development and the lots, parcels, units or interests therein offered, and ... all unusual or material circumstances or features affecting the development." N.J.S.A. 45:22A-28(a). In addition to the specific items to be included in the Public Offering Statement, N.J.A.C. 5.26-6.6(a)7 requires that every agreement for the purchase of an interest in a planned real estate development *510 contain a statement wherein the purchaser acknowledge that they received a copy of the Public Offering Statement.
Defendants are unable to produce an agreement acknowledging the receipt of the Public Offering Statement. Plaintiffs, therefore, request that the purchase of Unit # 210 from defendants be rescinded, pursuant to N.J.S.A. 45:22A-37(b) which provides:
b. The court may, in addition to remedies provided herein, frame such other relief as may be appropriate under the circumstances. If the purchaser shall fail in establishing a cause of action, and the court further determines that the action was wholly without merit, the court may award attorney's fees to the developer.
Defendants concede that they have no clear recollection of the transaction involving plaintiffs and rely upon the assertion that it was their practice to present every prospective purchaser with a copy of the Master Deed and Public Offering Statement upon the receipt of a refundable deposit, or failing that, upon the execution of the purchase agreement.
In argument, as well as in their submissions, defendants have focused on the appropriateness of the remedy rather than contesting the inadvertent violation of the Act. Plaintiffs' assertions are definite. The defendants' lack of specific recollection in conjunction with their inability to produce any document containing plaintiffs acknowledgment of the receipt of the Public Offering Statement compels the conclusion that a Public Offering Statement was not provided to plaintiffs.
Defendants' counter-arguments to excuse their failure to comply with the Act are briefly noted here. Defendants counter that it was plaintiffs' failure to conduct this transaction in a customary manner that resulted in the nonreceipt of the Public Offering Statement. Additionally defendants contend that if plaintiffs had referred to the Master Deed, referencing both their unit deed and title policy, they would have learned the status of the manager's office. The "ifs" multiply. If the plaintiffs had executed a purchase agreement, they would have seen that they were entitled to receive a Public Offering *511 Statement. If plaintiffs had paid their deposit in person, they would have received a Public Offering Statement. Instead plaintiffs, relying upon Mrs. Enfield's experience as a real estate agent, completed the settlement through the mail without the assistance of legal counsel. Simply stated, the court rejects any defense predicated on plaintiffs' alleged lack of due care. The Act was clearly meant to be consumer-oriented and therefore these defenses merit little consideration.
Statutes mandating or requiring the delivery of a Public Offering Statement by a developer to a purchaser in connection with the sale of a unit in a subdivision, condominium or planned real estate development are consumer oriented and remedial in nature. DiSandro v. Makahuena Corp., 588 F. Supp. 889, 893 (D.Hawaii 1984); Rockefeller v. High Sky, Inc., 394 F. Supp. 303, 304 (E.D.Pa. 1975); Dorchester Development, Inc. v. Burk, 439 So.2d 1032, 1035 (Fla.App. 1983); Schatz v. Jockey Club Phase III, Ltd., 604 F. Supp. 537, 542 (S.D.Fla. 1985); Kruse v. Holzer, 34 Ohio App.3d 356, 518 N.E.2d 961, 963 (1986). These statutes should be construed to carry out their legislative purpose. Riotto v. Van Houten, 235 N.J. Super. 177, 561 A.2d 1168 (App.Div. 1989) aff'g, 235 N.J. Super. 162, 561 A.2d 691 (Law Div. 1988).
Regardless of how the transaction was completed, defendants argue that rescission is not an appropriate remedy relying upon N.J.S.A. 45:22A-37(a) which provides:
a. Any developer disposing of real property subject to this act, who shall violate any of the provisions of section 6 hereof, or who in disposing of such property makes an untrue statement of material fact or omits a material fact from any application for registration, or amendment thereto, or from any public offering statement, or who makes a misleading statement with regard to such disposition, shall be liable to the purchaser for double damages suffered, and court costs expended, including reasonable attorney's fees, unless in the case of an untruth, omission, or misleading statement such developer sustains the burden of proving that the purchaser knew of the untruth, omission or misleading statement, or that he did not rely on such information, or that the developer did not know and in the exercise of reasonable care could not have known of the untruth, omission, or misleading statement.
*512 Also defendants rely on the decision in Ray v. Beneficial Finance Co., 92 N.J. Super. 519, 224 A.2d 143 (Ch.Div. 1966), wherein the court held that if it is determined that rescission is the appropriate remedy in an action, the parties must be returned to status quo ante. Defendants maintain that they cannot be returned to status quo ante. The formula to put the parties back in that position would have to take into account the use and enjoyment and the tax benefits derived by plaintiffs over the past three and a half years. These calculations involving the recapture of depreciation and recalculation of tax liabilities would be painfully complex. Defendants suggest that the dramatic turn of events that has occurred in the real estate market over the past year also mitigates against rescission being employed by a court of equity. More to the point, defendants correctly assert that the plaintiffs have produced no evidence to enable the court to complete those calculations.
The legislative history of the act is relevant. The act as originally introduced as Senate Bill # 148 reads:
In addition to any other remedies and at the discretion of the court, the purchaser, under the preceding subsection, may recover the consideration paid for the lot, parcel, unit, or interest in the development together with interest at the rate of 6% per year from the date of payment, property taxes paid, costs, and reasonable attorneys fees less the amount of any income received from such lands upon tender of appropriate instruments of reconveyance.
The Senate State Government, Federal Interstate Relations and Veterans Affairs Committee amended this provision to read:
The court may, in addition to other remedies provided herein, frame such other relief as may be appropriate under the circumstances....
An explanatory comment accompanied the bill. It states in pertinent part:
This bill, sponsored by Senator Fay, is designed to be a companion measure to P.L. 1975, c. 235 (C.45:15-16.3 et seq.) the `Land Sales Full Disclosure Act'. The `Land Sales Full Disclosure Act' regulates the sale of land through promotional plans outside the State of New Jersey. The bill presently under *513 consideration would regulate disclosure of the disposition of real estate within the State of New Jersey.
........
The bill provides for recovery of damages and penalties. The recovery of damages section was amended so that rather than a detailed rescission formula as specified in the original language, a purchaser who brings a successful action would be awarded double damages...." 45 N.J.S.A. 1990 Supplement p. 102.
The Land Sales Full Disclosure Act mentioned above provides in N.J.S.A. 45:15-16.21(a)2:
No person may dispose or participate in the disposition of any interest in subdivided lands unless a current public offering statement is delivered to the purchaser and the purchaser is afforded a reasonable opportunity to examine the public offering statement prior to the disposition. Failure to deliver such public offering statement shall result in automatic rescission of any contract entered into at the discretion of the purchaser.
The Land Sales Full Disclosure Act also provides that in addition to any other appropriate legal or equitable remedy the court shall award double damages and attorney's fees. N.J.S.A. 45:15-16.23a. The Assembly Committee recommended a reduction of the 10-day "cooling off" period in Section 6b to 7 days in order to make the bill consistent with the "Land Sales Full Disclosure Act." 45 N.J.S.A. 1990 Supplement p. 103.
The comments to Senate Bill # 148 state that the New Jersey Planned Real Estate Development Full Disclosure Act is patterned after the [Model Land Sales Practices Act, 7A Uniform Laws Annotated 669 (1985)] and the Retirement Community Full Disclosure Act, N.J.S.A. 45:22A-1 et seq. Specifically, Section 21 of the Act, N.J.S.A. 45:22A-41, extends its provisions to any retirement subdivision or community as defined by the Retirement Community Full Disclosure Act, N.J.S.A. 45:22A-1 et seq. The Retirement Community Full Disclosure Act, N.J.S.A. 45:22A-1 et seq., under similar circumstances, provides in N.J.S.A. 45:22A-16(b):
In addition to any other remedies, the purchaser . .., may recover the consideration paid for the ... unit ... together with interest at the rate of 6% per year from the date of payment, property taxes paid, costs, and reasonable attorneys fees less the amount of any income received from such subdivided lands upon tender of appropriate instruments of reconveyance.... N.J.S.A. 45:22A-16(b).
*514 Relying in part on the legislative history of the Act, this court holds that rescission is not the preferred remedy of the statute. Instead, assuming plaintiffs prove successful, the appropriate remedy would be an award of double damages pursuant to N.J.S.A. 45:22A-37(a).
Plaintiffs argue that the Act should be read in pari materia with the Land Sales Full Disclosure Act and the Retirement Community Full Disclosure Act, as part of a comprehensive scheme by the Legislature to cover sales of real estate both inside the State of New Jersey (the Act) and outside the State of New Jersey (the Land Sales Full Disclosure Act). Plaintiffs maintain that given that reading, the violation herein mandates automatic rescission since the reading of the Act clearly indicates that double damages is only an appropriate remedy where a false or misleading statement or omission is made in connection with a Public Offering Statement.
Plaintiffs further argue that there would be no incentive for developers to deliver a Public Offering Statement to purchasers if rescission were not an available remedy. Plaintiffs concede that rescission may be a harsh remedy but argue that it is an appropriate course of action given the clear mandate of N.J.S.A. 45:22A-26(a)2.
This court does not read N.J.S.A. 45:22A-37 to limit the monetary remedies set forth therein only to cases where a false or fraudulent offering statement is provided to the purchaser. Section 6 referred to in N.J.S.A. 45:22A-37(a) refers to N.J.S.A. 45:22A-26, which mandates the delivery of the current public offering statement.
It seems clear to this court that the mere failure to supply a public offering statement would trigger the remedies of Section 37.
The law as applied in other states is instructive. Alaska, Arizona, Connecticut, Florida, Hawaii, Maryland, Michigan, New York, Pennsylvania and Virginia have acts similar to New Jersey. Other states also regulate condominium developments *515 through other mechanisms. See Senate Committee Statement, 45 N.J.S.A. 1990 Supplement p. 102.
The Model Land Sales Practices Act, 7A Uniform Laws Annotated 669 (1985) has been adopted in Alaska, Connecticut, Florida, Hawaii, Idaho, Kansas, Minnesota, Montana, South Carolina and Utah. Section 4(2) prohibits the sale of subdivided land unless a current Public Offering Statement is delivered to a prospective purchaser prior to the disposition. Under Section 16(b) of the Act, a purchaser has the absolute right to rescind the purchase and recover an attorney's fee if the developer fails to deliver a Public Offering Statement in accordance with the Acts' provisions. Since the New Jersey Planned Real Estate Development Full Disclosure Act is patterned after the Model Land Sales Practices Act, plaintiffs claim that remedy should be afforded to them. However, Sec. 16f of the Act emphasizes swift action and limits even actions seeking the recovery of money damages by mandating that suit must be instituted within four years of the first payment of money in the contested transaction.
The Uniform Condominium Act, 7 Uniform Laws Annotated 421 (1985), has been adopted in Arizona, Maine, Minnesota, Missouri, New Mexico, Pennsylvania, Rhode Island, Virginia and Washington. Section 4-102(c) requires that a developer deliver a Public Offering Statement to a unit purchaser and Section 4-108(a) provides for a 15 day cooling-off period before conveyance during which time a purchaser has an absolute right to rescind.
Section 4-108(c) provides that if a unit is conveyed without a Public Offering Statement being delivered to the purchaser as required by Section 4-102(c), the purchaser is entitled to receive 10% of the sales price in addition to any other rights to damages or relief. Section 4-117 provides for punitive damages to be available to a successful plaintiff in the event of a willful failure to comply and also provides for discretionary attorney's fees.
*516 Comment 6 to Section 4-108, 7 Uniform Laws Annotated 548 (1985) indicates that a failure to deliver a Public Offering Statement does not give a purchaser a statutory right to cancel a conveyance or to reconvey the unit once conveyance has occurred. This comment points out that to do so would cause serious mechanical and title problems that could not be resolved readily. The Uniform Condominium Act also provides that the purchasers retain any right they have to proceed and recover under general state law.
The Uniform Common Interest Ownership Act, 7 Uniform Laws Annotated 231 (1985) contains both similar provisions and comments regarding delivery of the Public Offering Statement as does the Uniform Condominium Act. It provides identical remedies and has been adopted by Alaska, Connecticut and West Virginia.
The Federal Interstate Land Sales Full Disclosure Act, 15 U.S.C. Sec. 1701 et seq., requires that a developer furnish a prospective purchaser with a property report in advance of the signing of any agreement. 15 U.S.C. Sec. 1703(a)(1)(B). If a property report is not delivered as provided by the Act, the purchaser has the absolute right to revoke the transaction. 15 U.S.C. Sec. 1703(c). See Bettis v. Lakeland, Inc., 402 F. Supp. 1300 (E.D.Tenn. 1975); Law v. Royal Palm Beach Colony, Inc., 578 F.2d 98 (5th Cir.1978); Finst Development, Inc. v. Bemaor, 449 So.2d 292 (Fla.Dist.Ct. of App. 1984); Dorchester Development, Inc. v. Burk, 439 So.2d 1032 (Fla.Dist.Ct. of App. 1983).
The New Jersey Legislature referred to the Federal Interstate Land Sales Full Disclosure Act in the legislative statement that accompanied the Retirement Community Full Disclosure Act:
This act will complement the Interstate Land Sales Full Disclosure Act recently adopted by Congress. This Federal legislation provides for full disclosure of interests in real estate subdivisions, not restricted to those sold to senior citizens or people in retirement, promoted, advertised or sold through the mails or in Interstate Commerce. This law is also similar to full disclosure acts covering most subdivisions (again not restricted to sales to senior citizens), passed in a number of jurisdictions including California (Cal.Bus. & Prof.Code, *517 Secs. 11000-11023); Arizona (Ariz.Rev.Stat., Secs. 32-2181 to 32-2185); Florida (Fla. Stat. Ann., Secs. 475.45-475.55); and New Mexico (New Mex.Stats.Nann. Secs. 70-3-1 to 70-3-9).
Over the years the Federal Interstate Land Sales Act has developed a substantial body of case law. It has been held that whether a purchaser is a sophisticated business person or whether he has been given the required information by other means, his or her right to rescind is not affected if a property report has not been provided. Rockefeller v. High Sky, Inc., 394 F. Supp. 303 (E.D.Pa. 1975). The purchaser is not required to show actual injury in order to rescind. Schatz v. Jockey Club Phase III, Ltd., 604 F. Supp. 537, 542 (S.D.Fla. 1985).
A defendant's equitable defenses of estoppel, laches and unclean hands do not as a matter of law bar a purchaser's right to rescind. Appalachian, Inc. v. Olson, 468 So.2d 266, 269 (Fla.Dist.Ct. of App. 1985). (In Appalachian the rescission was requested in a time sale contract before closing took place, without any delay after acquiring knowledge of the right to rescind and within the two year statute of limitation provided in 15 U.S.C.A. Sec. 1703(c). See also Law v. Royal Palm Beach Colony, Inc., 578 F.2d 98, 101 (5th Cir.1978). (Rescission in Law was requested nine months after the first payment of money was made under the time sale contract and well within the two year statute of limitation provided in that Act.)
As noted, 15 U.S.C.A., Sec. 1703(c) provides for a relatively short two year limitation, even for actions seeking monetary damages, which limitation period is initiated by the signing of the contract.
Some states have enacted statutes which expressly grant a purchaser a statutory right of rescission given the failure by seller to deliver a Public Offering Statement:
1. Connecticut:
Connecticut Condominium Act
22 Connecticut General Statutes Annotated 47-74f
2. Georgia:
Georgia Condominium Act

*518 31 Official Code of Georgia 44-3-111(c)
3. Maryland:
Maryland Condominium Act
Annotated Code of Maryland-Real Property 11-126(e)
4. Michigan:
Michigan Land Sales Act
Michigan Compiled Law Annotated 565.806
5. New Hampshire:
New Hampshire Condominium Act
New Hampshire Rev.Statutes Annot. 356-B:65 (1984)
6. New Hampshire:
New Hampshire Land Sales Full Disclosure Act
New Hampshire Rev.Statutes Annot. 356-A:16 (1984)
7. North Dakota:
North Dakota Subdivided Lands Disposition Act
9A North Dakota Century Code 43-23.1-18
8. Ohio:
Ohio Condominium Act
53 Ohio Revised Code Annotated 5311.27
9. Oklahoma:
Oklahoma Subdivided Land Sales Code
Oklahoma Statutes Annotated 71-643
10. Virginia:
Virginia Condominium Act
8 Code of Virginia 55-79.88
11. Wisconsin:
Wisconsin Condominium Ownership Act
Wisconsin Statutes Annotated 703.33(4)
Each of the above statutes have statutory limitations on actions for rescission which are as brief in some cases as days:
Five Days:
Michigan
Oklahoma
Wisconsin
Seven Days:
Georgia
Ten Days:
Virginia
Fifteen Days:
Maryland
Connecticut
*519 Ohio
or as long as years:
Two Years:
New Hampshire (6 years for fraud)
At any rate, the emphasis in all the jurisdictions surveyed which permit rescission appears to be on swift rescission if there is to be avoidance at all.
Carefully drafted statutes simplify the court's task in many cases. In Luster v. Jones, 70 Ill. App.3d 1019, 27 Ill.Dec. 66, 388 N.E.2d 1029 (1979), wherein rescission was denied, purchasers had closed title. The decision turned upon the specific wording of the Illinois statute which provided that rescission was only available before the closing of the contract. Id., 27 Ill.Dec. at 75, 388 N.E.2d at 1038.
Despite this somewhat extensive background the matter is not without doubt. No New Jersey case authority has been located on point. It is the opinion of this court that while rescission may be ordered to make an aggrieved plaintiff whole in a case involving a violation of N.J.S.A. 45:22A-21, it is neither a mandated remedy nor the sole remedy under the statute. The history not only of the statute itself but also the history and development of parallel statutes leads this court to conclude that the preferred remedy of N.J.S.A. 45:22A-21 is money damages in cases where the early detection of the violation is absent. If the violation is detected early, then rescission could very well be the most appropriate and equitable remedy to fulfill the mandate of the statute and to make the plaintiff whole. Each case will turn on its facts.
It is in this context that we turn to defendants assertion of the equitable defense of laches. Defendants contend that the claim that plaintiffs did not realize until the Fall of 1988 that they were entitled to receive a Public Offering Statement in June of 1986 is legally insufficient to negate the defense of laches. Although not agreeing with defendants that plaintiffs are barred by laches, the court nonetheless also disagrees with *520 plaintiffs' assertion that the late discovery of the violation and/or the delay in instituting action is of minimal significance. In concluding that rescission is not an appropriate remedy under the facts of this case, this court cannot help but be influenced by its explicit finding of plaintiffs' lack of due diligence. Plaintiffs' delay seriously limited this tribunal's ability to consider rescission as an appropriate and equitable remedy under the circumstances.
The critical question here is whether plaintiffs' lack of due diligence defeats their right to obtain any recovery whatsoever under the statute.
Laches is an equitable defense generally defined as: "Such neglect or omission to assert a right as taken in conjunction with the lapse of time more or less great in other circumstances causing prejudice to an adverse party so as to operate as a bar in a court of equity." Pomeroy, 2 Eq. Jurisprudence, Sec. 419 at 171-72 (5th Ed. 1941).
The policy behind laches is the discouragement of stale claims. Gladden v. Bd. of Trustees of Public Emp. Retirement System, 171 N.J. Super. 363, 409 A.2d 294 (App. Div. 1979). The burden of proof is upon the defendant to show that his adversary prejudiced him by delaying the assertion of his claim without excuse or explanation. Allstate Ins. Co. v. Howard Savings Inst., 127 N.J. Super. 479, 317 A.2d 770 (Ch. Div. 1974). The factors considered by courts are the length of delay, whether the delay was reasonable or unreasonable and the changing conditions of either or both parties during delay. Lavin v. Bd. of Education of City of Hackensack, 90 N.J. 145, 447 A.2d 516 (1982). Lapse of time should generally be considered as running from the date when alleged legal injury occurred. Summer Cottagers' Association of Cape May v. City of Cape May, 34 N.J. Super. 67, 111 A.2d 435 (Law Div. 1954), aff'd, 19 N.J. 493, 117 A.2d 585 (1955). (In the instant case the initial damage occurred at the time of closing on July 10, 1986.) Even if laches should not apply, plaintiffs *521 must be "reasonably prompt" in asserting their claim. In Bridgeton Education Assoc. v. Board of Education of Bridgeton, 132 N.J. Super. 554, 558, 334 A.2d 376 (Ch.Div. 1975), although the court did not find laches, plaintiff was barred from asserting a claim involving the terms and conditions of employment after a delay of one year. Plaintiffs in this case entered into the contract on July 10, 1986, realized they had a claim in the fall of 1988 and filed the complaint on November 6, 1989. In Berkeley Dev. Co. v. Great Atlantic and Pacific Tea Co., 214 N.J. Super. 227, 518 A.2d 790 (Law.Div. 1986), the court held that a critical determination as to whether a claim is stale is whether the party had knowledge of the claim at an earlier date but failed to assert it.
"The test to determine whether the doctrine is applicable is not always the actual knowledge of the party but may be what the party might have known by use of the means of information within his reach with the vigilance which the law requires of him." Cameron v. Penn Mutual Life Insurance Co., 116 N.J. Eq. 311, 314, 173 A. 344 (Ch.Div. 1934). In Cameron, the petitioner claimed he only "recently" learned of the facts constituting his claim. The court, however, found that it was not shown that the plaintiff could not have discovered the necessary facts through "reasonable diligence." Plaintiffs herein have been found not to have received a Public Offering Statement outlining their interests and rights in the property which they were purchasing. Four summers passed before any complaint was voiced by the plaintiffs. The complaint is that the plaintiffs thought that the "Sales Office" unit of the condominium was a common element or alternatively owned by the association. The reality is that it was retained by the developer. How quickly would it be reasonable to expect a purchaser to discover this fact given due diligence? More to the point, how quickly would a purchaser exercising due diligence discover that seller failed to deliver a public offering statement prior to the contract date as required by the statute? It would seem reasonable that any purchaser of a condominium would *522 learn the operative facts regarding the condominium and the condominium association fairly soon.
When a party has knowledge of his claim and fails to promptly seek a remedy, laches will apply. Wendt v. Bergen Savings Bank, 131 N.J. Eq. 380, 25 A.2d 511 (Ch.Div. 1942), aff'd in part and rev'd in part, 133 N.J. Eq. 34, 30 A.2d 31 (Ch.Div. 1943). Plaintiffs can, however, overcome the defense of laches by establishing a legal reason for the delay. General Electric Co. v. Sciakey Bros., Inc., 187 F. Supp. 667 (E.D.Mich. 1960), aff'd, 304 F.2d 724 (6th Cir.1962). No justifiable excuse was offered for the delay.
A valid excuse by plaintiffs is justifiable ignorance of the facts creating a cause of action. Donnelly v. Ritzendollar, 14 N.J. 96, 101 A.2d 1 (1953). However, once the facts become known to the party, he must use "reasonable diligence to enforce his right." Melosh v. Melosh, 125 N.J. Eq. 486, 6 A.2d 472 (Ch.Div. 1939). Even under the plaintiffs' scenario, it is conceded that the plaintiffs learned of defendants' failure to comply with an obligation of the statute as early as the fall of 1988. Generally, where a plaintiff relies on ignorance of the facts as an excuse for delay in asserting his right, he must show why he had no knowledge of any facts that would have put him on inquiry, as well as show how and when he first acquired knowledge of the facts which gave rise to the claim. Turtzo v. Boyer, 370 Pa. 526, 88 A.2d 884 (1952). Plaintiffs' delay in this matter is inexcusable.
Although it would be the easy answer, a mere finding that plaintiffs have been dilatory in bringing this action is not enough to warrant a finding that plaintiffs are barred from recovering.
The most important factor that must be established to support a finding of laches is prejudice to the defendant. Auciello v. Stauffer, 58 N.J. Super. 522, 156 A.2d 732 (App.Div. 1959). Mere lapse of time is not enough to constitute laches, however, a "long lapse of time, if unexplained, may create or justify a *523 presumption against existence or validity of plaintiff's rights." Atlantic City v. Civil Service Commission of New Jersey, 3 N.J. Super. 57, 65 A.2d 535 (App.Div. 1949).
Laches depends on more than inexcusable delay in asserting a claim; it depends on inexcusable delay causing undue prejudice to the party against whom the claim is asserted ... One who would invoke laches must show a delay which has subjected that party to a disadvantage in asserting and establishing their claimed right or defense caused by their detrimental reliance on their adversary's conduct. Law v. Royal Palm Beach Colony, Inc., supra at 101. Certainly, it is not difficult to find and I do find that plaintiffs' delay would have worked hardship on the defendants if rescission were to be ordered. Given the latitude in fashioning a remedy that the statute permits, rescission need not be granted. The remedy at law is not unduly magnified in this instance by plaintiffs' delay.
N.J.S.A. 45:22A-37(d) provides for a six year statute of limitations for any action seeking recovery under "The Planned Real Estate Development Full Disclosure Act". Laches as a defense may be applied before the statute of limitations expires only where strong equities appear. Appalachian v. Olson, supra at 269. Although defendants have convinced this court that plaintiffs' delay mitigates against rescission, there has been no showing of prejudice by the defendants such as to preclude plaintiffs' monetary recovery under the statute. It is the holding here that the thrust of the statute is to award monetary damages to an aggrieved plaintiff and that the limitation period of six years controls absent such delay as to make an award of monetary damages unjust.
Plaintiffs' claim for damages, insofar as it seeks monetary damages and not rescission, pursuant to N.J.S.A. 45:22A-26(a)(2) is not time-barred under the doctrine of laches.
The proper measure of damages in this case is loss of bargain. It has been represented that the condominium association has obtained, through purchase or lease, the space *524 necessary to conduct rental activity in this combination of residential facility and condotel. Certainly the pro-rata expenses to the plaintiffs for such could be considered by this court as damage suffered by the plaintiffs. The court could also award a differential between fair-market value of the purchased unit, if it had been purchased with manager facilities as opposed to the fair-market value of the unit absent that amenity.
There has been proof presented to this court which justifies this court in concluding that that amount is $3,000. The statute allows the doubling of damages and I so direct. Plaintiffs' allegations of damages in regard to the paper street that allegedly exists in front of the condominium, I find to be not supported by either the proofs or quantified in such a manner as to permit this court to award damages thereon.
Judgment for plaintiffs in the amount of $6,000. Counsel for plaintiffs to submit an appropriate form of Order.
Application for attorney's fees pursuant to N.J.S.A. 45:22A-37(a) must be made within 15 days and be supported by appropriate affidavits or suitable documentation.