690 A.2d 1043

TOWNSHIP OF STAFFORD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. STAFFORD TOWNSHIP ZONING BOARD OF ADJUSTMENT AND HUGH SCHULTZ, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted February 19, 1997—Decided March 31, 1997.

Before Judges MICHELS and COBURN.

*Gilmore & Monahan*, attorneys for appellant (*Charles W. Hutchinson*, on the brief).

*Wilbert & Montenegro*, attorneys for respondent Hugh Schultz (*Nicholas C. Montenegro*, of counsel and on the brief).

*Michael H. Mathis*, attorney for respondent Stafford Township Zoning Board of Adjustment, joins in the brief of appellant.

The opinion of the court was delivered by

COBURN, J.S.C. (temporarily assigned).

This action in lieu of prerogative writs, *R.* 4:69, projects two important issues under the Municipal Land Use Law, *N.J.S.A.* 40:55D-1 to -129 (MLUL): does a zoning board of adjustment have jurisdiction to certify a nonconforming use as one which existed before adoption of the zoning ordinance which rendered the use nonconforming when the applicant has failed to notify the property owners within 200 feet of the property of the hearing; if not, does the governing body of the municipality have standing to challenge the award of the certificate in those circumstances. The Law Division dealt only with the second issue, holding that under *Township of Dover v. Board of Adj. of Tp. of Dover*, 158 *N.J.Super.* 401, 386 *A.*2d 421 (App.Div.1978) the governing body lacked standing. Consequently, it dismissed the action. Plaintiff appeals. We reverse the judgment below and vacate the certification issued by the zoning board without prejudice to the applicant's right to reapply to the zoning board on proper notice to the neighboring landowners.

I

In May 1995 defendant Hugh Schultz filed a document entitled "Development Application" with the Stafford Township Zoning Board of Adjustment. He listed as the purpose of the application "interpretation by [the] zoning board pursuant to *N.J.S.A.* 40:55D-70b and 68 as to whether [the] subject property and structure is a legal non-conforming business use for the sale,

purchase, and repair of cars." The property is Lot 13, Block 229 on the Stafford Tax Map. It is about 160' by 140' and contains a wooden building. It adjoins a smaller lot which Schultz uses for selling and repairing cars under the trade name Manahawkin Auto Sales. He did not provide notice of the hearing to neighboring landowners.

In light of the issues projected and our disposition of the case, the testimony before the board need not be detailed. The applicant and five supporting witnesses testified that the use of Lot 13 for the display and sale of automobiles existed long prior to the adoption of the Stafford zoning ordinance prohibiting such use and continued to the present. The only witness in opposition, the Township's Deputy Code Enforcement Officer, testified that the lot had not been used for such purposes for approximately three years preceding the application. On August 9, 1995, the zoning board adopted a resolution granting Schultz most of the relief requested, but providing these limitations:

2. That the use found to be exempt is specifically limited to those activities testified to and established before the Board on July 12, 1995, and specifically does not include the service of or repair of any motor vehicle whatsoever, nor does the use in any way extend to any structures located on the subject premises, nor does the use extend to any improvements of the premises whatsoever. This interpretation is further subject to the following conditions:

a. No automobile shall be parked by the applicant within the right-of-way of Bay Avenue or any closer than ten feet from the existing edge of pavement of Bay Avenue, whichever is further from the roadway;

b. No storage of junk cars or parts of junk vehicles of any type of junk or similar items as defined in the ordinances of Stafford Township shall be permitted at any time on the subject premises.

## II

The well-established legal principles governing nonconforming uses are summarized in *Belleville v. Parrillo's, Inc.*, 83 *N.J.* 309, 315–17, 416 *A.*2d 388 (1980), where the Court made this observation:

The method generally used to limit nonconforming uses is to prevent any increase or change in the nonconformity. Under that restrictive view our courts have held that an existing nonconforming use will be permitted to continue only if

it is a continuance of substantially the same kind of use as that to which the premises were devoted at the time of the passage of the zoning ordinance. In that regard nonconforming uses may not be enlarged as of right except where the change is so negligible or insubstantial that it does not warrant judicial or administrative interference. Where there is doubt as to whether an enlargement or change is substantial rather than insubstantial, the courts have consistently declared that it is to be resolved against the enlargement or change.

[*Id.* at 316, 416 *A.*2d 388 (citations omitted).]

The restrictive view is based upon the discordancy which generally results from the presence of nonconforming uses in areas zoned for other purposes and reflects "the fervent hope that they would in time wither and die and be replaced by conforming uses." *Grundlehner v. Dangler,* 29 *N.J.* 256, 263, 148 *A.*2d 806 (1959).

The MLUL expressly addresses nonconforming uses in two sections, *N.J.S.A.* 40:55D–68 [1] and *N.J.S.A.* 40:55D–70d.[2] Section 68 concerns applications for certifications that an existing use or structure predated the zoning ordinance prohibiting the use or

---

[1] Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the structure so occupied and any such structure may be restored or repaired in the event of partial destruction thereof.

The prospective purchaser, prospective mortgagee, or any other person interested in any land upon which a nonconforming use or structure exists may apply in writing for the issuance of a certificate certifying that the use or structure existed before the adoption of the ordinance which rendered the use or structure nonconforming. The applicant shall have the burden of proof. Application pursuant hereto may be made to the administrative officer within one year of the adoption of the ordinance which rendered the use or structure nonconforming or at any time to the board of adjustment. The administrative officer shall be entitled to demand and receive for such certificate issued by him a reasonable fee not in excess of those provided in R.S. 54:5–14 and R.S. 54:5–15. The fees collected by the official shall be paid by him to the municipality. Denial by the administrative officer shall be appealable to the board of adjustment. Section 59 through 62 of P.L.1979, c. 291 (C.40:55D–72 to C.40:55D–75) shall apply to applications or appeals to the board of adjustment.

[2] The board of adjustment shall have the power to:

\* \* \* \* \* \* \* \*

d. In particular cases and for special reasons, grant a variance to allow departure from regulations pursuant to article 8 [*N.J.S.A.* 40:55D–62 *et seq.*] of this act to permit \* \* \* (2) an expansion of a nonconforming use....

structure and Section 70d governs requests for an expansion of a nonconforming use. Note, however, that Section 68 only authorizes application to the zoning board. Unlike Section 70d, it does not expressly authorize the zoning board to grant the relief. By implication, it is Section 70b [3] which authorizes zoning boards to hear matters arising under Section 68.

The novel question which has arisen in this case is whether a hearing before a zoning board arising under Section 68 and Section 70b is a public hearing requiring notice to the neighboring landowners.

The MLUL's requirements respecting notice to neighbors of hearings is set forth in *N.J.S.A.* 40:55D–12, which provides in pertinent part:

a. Public notice of a hearing on an *application for development* shall be given, except for (1) conventional site plan review pursuant to section 34 of P.L.1975, c. 291 (C.40:55D–46), (2) minor subdivisions pursuant to section 35 of P.L.1975, c. 291 (C.40:55D–47) or (3) final approval pursuant to section 38 of P.L.1975, c. 291 (C. 40:55D–50); provided that the governing body may by ordinance require public notice for such categories of site plan review as may be specified by ordinance; and provided further that public notice shall be given in the event that relief is requested pursuant to section 47 or 63 of P.L.1975, c. 291 (C. 40:55D–60 or C. 40:55D–76) as part of an application for development otherwise excepted herein from public notice. Public notice shall be given by publication in the official newspaper of the municipality, if there be one, or in a newspaper of general circulation in the municipality.

b. Notice of a hearing requiring public notice pursuant to subsection a. of this section shall be given to the owners of all real property as shown on the current tax duplicates, located in the State and within 200 feet in all directions of the property which is the subject of such hearing. . . .

[emphasis added.]

An "application for development" is defined in *N.J.S.A.* 40:55D–3:

'Application for development' means the application form and all accompanying documents required by ordinance for approval of a subdivision plat, site plan,

---

[3] The board of adjustment shall have the power to:

\* \* \* \* \* \* \* \*

b. Hear and decide requests for interpretation of the zoning map or ordinance or for decisions upon other special questions upon which such board is authorized to pass by any zoning or official map ordinance, in accordance with this act. . . .

planned development, conditional use, *zoning variance* or direction for the issuance of a permit pursuant to section 25 or section 27 of P.L.1975, c. 291 (*N.J.S.A.* 40:55D–34 or *N.J.S.A.* 40:55D–36).

[emphasis added.]

And a "variance" is defined in *N.J.S.A.* 40:55D–7:

'Variance' means permission to depart from the literal requirements of a zoning ordinance pursuant to section 47 [*N.J.S.A.* 40:55D–60] and subsection 29.2b. [*N.J.S.A.* 40:55D–40b], 57c. and 57d. [*N.J.S.A.* 40:55D–70c and d] of this act.

An application to a zoning board for a certification recognizing the legality of a pre-existing nonconforming use pursuant to *N.J.S.A.* 40:55D–68 and –70b is not expressly included within *N.J.S.A.* 40:55D–3's definition of an "application for development." Thus, read literally the statute would not require that neighbors be notified of the hearing. On the other hand, if the application is for an expansion of a nonconforming use, it fits squarely within the definition of an "application for development." That is so because an "application for development" specifically includes a "zoning variance" and *N.J.S.A.* 40:55D–7 states that variances include applications pursuant to *N.J.S.A.* 40:55D–70d, which, in turn, lists "an expansion of a nonconforming use" as a matter requiring a variance.

In this case the application asserted that the property and structure was a "legal nonconforming business use for the sale, purchase, and repair of cars." However, the applicant's evidence established that cars were not repaired on this lot and that the structure had not been used at all for any purpose relating to the display and sale of cars. The zoning board recognized that use of the lot for repairing vehicles and any use of the structure in relation to the applicant's business would constitute expansions of a nonconforming use according to the evidence. Therefore, its resolution barred those activities.

The problem with excepting Section 68 applications from the notice provisions of Section 12, as demonstrated by what occurred in this case, is that prior to the hearing neither the zoning board nor the public is in a position to know whether the applicant's request will in fact be limited to approval of an existing use, or will

instead result in an expansion of an existing use. And this is true without regard to the manner in which the application is styled: whether it is an expansion or not will turn on the facts developed at the hearing. Since a zoning board can only hear an application for expansion of a nonconforming use under *N.J.S.A.* 40:55D–70d on notice to the neighboring landowners, a Section 68 application logically should be accorded the same treatment. That follows because the applicant may be claiming as pre-existing what is in reality an expansion of a use.

Thus, we are confronted with the not unfamiliar problem of legislative interpretation in a case involving "a situation which apparently escaped the attention of the draftsman...." *Dvorkin v. Dover Tp.*, 29 *N.J.* 303, 313, 148 *A.2d* 793 (1959). Our duty is clear, as Chief Justice Weintraub observed in *New Capitol Bar & Grill Corp. v. Div. of Employment Sec.*, 25 *N.J.* 155, 135 *A.2d* 465 (1957):

> It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end 'words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms.'
>
> [*Id.* at 160, 135 *A.2d* 465 (citations omitted).]

More recently, the Court reiterated our duty in these pertinent terms:

> Generally, a court's duty in construing a statute is to determine the intent of the Legislature. In cases such as this, where it is clear that the drafters of a statute did not consider or even contemplate a specific situation, this Court has adopted as an established rule of statutory construction the policy of interpreting the statute "consonant with the probable intent of the draftsman 'had he anticipated the situation at hand.'"
>
> [*AMN, Inc. v. So. Bruns. Tp. Rent Leveling Bd.*, 93 *N.J.* 518, 525, 461 *A.2d* 1138 (1983) (citations omitted).]

Informed by these principles, and mindful of the inability to know in advance, or indeed until the end of the zoning board hearing, whether or not a particular application will result in the expansion of a nonconforming use or the reinstitution of a noncon-

forming use which had, in fact, been abandoned, we have no doubt the commonsense of the situation requires that we reject literalism in this context as contrary to the legislative design. Therefore, we hold that all zoning board applications relating to nonconforming uses are applications for development under Section 12, requiring notice to neighboring landowners.

Since notice was required by the MLUL, the failure of the applicant to provide the appropriate notices in this case deprived the zoning board of jurisdiction to act on the application. *Auciello v. Stauffer*, 58 *N.J.Super.* 522, 527, 156 *A.*2d 732 (App.Div.1959). Cox, *New Jersey Zoning and Land Use Administration*, § 27–1.5(g) at 444 (1996).[4]

## III

We turn next to the question whether the governing body has standing to raise the issue of the zoning board's lack of jurisdiction in an action in lieu of prerogative writs.

This precise issue has not been considered in our reported cases. However, in *Zoning Bd. of Adj. of Green Brook Tp. v. Datchko*, 142 *N.J.Super.* 501, 508 n. 2, 362 *A.*2d 55 (App.Div.1976) the court recognized, albeit in *dictum*, that a governing body had standing to challenge actions taken by its zoning board. Perhaps more to the point, the court was dealing with a case in which both

---

[4] Plaintiff also contends the zoning board lacked jurisdiction for another reason. On January 26, 1995, the Deputy Code Enforcement Officers wrote to defendant Schultz advising him that the use of Lot 13 was illegal and that a municipal court complaint would be filed if the activity continued. Plaintiff argues the letter was a decision by an administrative officer which had to be appealed within twenty days under *N.J.S.A.* 40–55D–72a. The letter was not issued pursuant to *N.J.S.A.* 40–55D–68. It was not a decision, but rather simply a threat of an action in the municipal court. Furthermore, engrafting Section 72a into *N.J.S.A.* 40:50–68 would be inconsistent with the express language of the latter section which permits applications for certification of the legality of nonconforming uses to be made to the zoning board "at any time." Therefore, we are satisfied that the twenty day requirement on which plaintiff relies is irrelevant.

the governing body and the zoning board had joined forces in the Superior Court to rescind the grant of zoning variances on the ground that they had been obtained by fraud. The court held:

> The township ... and the zoning board have a substantial public interest in preserving the integrity of the zoning ordinance. If, as here, a municipal authority has been induced to grant relief in connection therewith by fraud, it need not stand idly by. It or the municipal governing body may institute an action, such as that in the present case, to rescind the relief so granted and to enjoin what is actually a violation of the zoning ordinance and plan. From defendants' own application to the municipal authorities it is apparent that the present use of the premises would not have been feasible without the approvals of the site plan and the variances. Their misrepresentations denied the municipal agencies of an opportunity to review all of the facts before determining the propriety of the site plan approval, the grant of the variances or the issuance of the certificate of occupancy in the light of proper zoning considerations. Judicial relief by this action is available to these plaintiffs to rectify what may reasonably be considered a substantial impairment of the zoning plan.
>
> [*Id.* at 508–09, 362 *A.*2d 55 (citations omitted).]

The instant case is analogous. For here the approval was improperly obtained due to the lack of proper notice to the public and neighboring landowners. Furthermore, although the zoning board is denominated a defendant in this case, it contends here, as it did in the court below, that the governing body's position is well-taken.

The trial court believed that *Township of Dover, supra,* deprived the governing body of standing in this case. In that case the court said:

> [T]he board of adjustment is an independent administrative agency whose powers stem directly from the Legislature and hence are not subject to abridgement, circumscription, extension or other modification by the governing body. We also agree that a necessary corollary of that principle is that ordinarily the manner in which the board exercises its exclusive statutory power is not subject to monitoring by the governing body and is therefore immune not only to direct interference by the governing body but also to the indirect interference of an action in lieu of prerogative writs brought by the governing body seeking judicial review of the board's determinations. Our point of disagreement turns on the fact that what the township is here complaining of is not the manner in which the board exercised its statutory power. Its claim, rather, is that the board exceeded its statutory powers and in so doing usurped the function exclusively reserved to the governing body by the enabling legislation. Thus, this is not the ordinary variance case in which the board of adjustment's action may be vulnerable for such alleged misuses of discretion or power, as, for example, an action taken unwisely or imprudently, or

without an adequate factual basis in the evidence before it, or without an adequate statement of reasons or contrary to the governing body's collective perception of what the public good may permit or what the integrity of the zoning ordinance may require. In our judgment, review at the instance of the governing body of such alleged errors in the exercise of statutory authority and such disputes as to the exercise of discretion would seriously and perhaps irremediably undermine the board's essential autonomy. We are therefore satisfied that so long as the board acts within the ambit of its authority, whether it has acted wisely or not, and whether it has acted correctly or not, are not matters which the governing body itself should be able to raise.

An arrogation of authority is, however, quite a different matter and, in our view, is necessarily and obviously actionable by the body whose authority has been directly infringed upon.

[*Township of Dover*, 158 *N.J.Super.* at 408–09, 386 *A.*2d 421 (citations omitted).]

Thus, the *Dover* case appears to conflict with the *dictum* in footnote 2 of *Green Brook, supra.* However, we need not address that apparent conflict since in our view a recognition of the governing body's standing in this case would not be inconsistent with *Dover. Cf. Paruszewski v. Township of Elsinboro,* 297 *N.J.Super.* 531, 688 *A.*2d 662 (App.Div.1997).

We are not concerned here with a governing body challenging the wisdom of a zoning board's action or the sufficiency of its reasons for the action. *Dover* recognized that "an arrogation of authority" which infringed upon the authority of the governing body supported a finding of standing. *Id.* at 409, 386 *A.*2d 421. In the instant case, we are also involved with an arrogation of authority by the zoning board, *Auciello v. Stauffer, supra,* 58 *N.J.Super.* at 529, 156 *A.*2d 732, although we do not believe it was done knowingly. While here the arrogation did not directly infringe upon the governing body's authority, the specific nature of the arrogation, holding a hearing without the required notice to the neighboring landowners, substantially interfered with the ability of citizens to institute actions on their own. Particularly where the zoning board, as here, supports the position taken by its governing body, we see no reason for depriving the governing body of standing to institute and maintain the action in the Superior Court. As noted above, *Green Brook, supra,* provides additional support for our position in that regard.

The judgment of the Law Division is reversed and the resolution of the zoning board is vacated without prejudice to defendant Schultz's right to reapply to the zoning board pursuant to *N.J.S.A.* 40:55D–68 and –70b.