824 A.2d 160 (2003)
360 N.J. Super. 575
Diane MANCINI, Plaintiff-Respondent/Cross-Appellant,
v.
TOWNSHIP OF TEANECK, Teaneck Police Department, Donald Giannone, individually and in his capacity as Chief of the Teaneck Police Department, and Warren White, individually and in his capacity as Captain of the Teaneck Police Department, Defendants-Appellants/ Cross-Respondents.[1]
Superior Court of New Jersey, Appellate Division.
Argued February 6, 2002.
Decided April 2, 2002.
Remanded September 5, 2002.
Resubmitted September 23, 2002.
Decided October 10, 2002.
Remanded January 28, 2003.
Resubmitted and argued April 30, 2003.
Decided May 28, 2003.
Barry Asen, New York, NY, argued the cause for appellants/cross-respondents (Epstein, Becker & Green, attorneys; Mr. Asen, of counsel and on the brief).
Harold J. Ruvoldt, Jr., Asbury Park, argued the cause for respondent/cross-appellant (Edwards & Angell, attorneys; Cathy Fleming and Mr. Ruvoldt, Jr., of counsel; Mr. Ruvoldt, Jr. and Ms. Fleming, on the brief).
Before Judges BAIME, NEWMAN and AXELRAD.
Remanded by the Supreme Court September 5, 2002.
Remanded by the Supreme Court January 28, 2003.
The opinion of the court was delivered by AXELRAD, J.T.C. (temporarily assigned).
As directed by the Supreme Court in its summary remand order of January 28, 2003, we have reviewed our decision in *162 light of the arguments of the parties in respect of the defense of laches. See, e.g., Shepherd v. Hunterdon Developmental Center, 174 N.J. 1, 803 A.2d 611 (2002). We are satisfied our decision requires no modification.
On June 12, 1996, Diane Mancini, the first female police officer in the Township of Teaneck ("Township"), instituted suit against the Township, the Teaneck Police Department ("Department"), the police chief, and the former police captain. The complaint alleged claims of sexual harassment, sex discrimination and retaliation in violation of the Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 to -42, and intentional infliction of emotional distress,[2] commencing with her appointment as a police officer in 1981 through the date of filing. In their answer, defendants asserted legal and equitable affirmative defenses including the equitable defense of laches.
At trial, defendants did not assert or attempt to prove any facts to establish a defense of laches nor did they request charges to the jury seeking a determination of the date of the "last act" upon which a laches argument could be predicated. The evidence at trial demonstrated that the conduct and retaliation commenced as early as Mancini's appointment and continued even after the filing of the complaint. The jury awarded compensatory damages for emotional distress relating to Mancini's claims of sexual harassment and retaliation, as well as punitive damages. The trial court affirmed the jury award on Mancini's sexual harassment claim but reduced the verdict by remitting the retaliation damages award and vacating the punitive damages award.
On cross-appeals, in pertinent part, we upheld the trial court's ruling that the evidence was sufficient to support the officer's claim of a continuing violation of sexual harassment and, therefore, the jury was entitled to consider all evidence since 1981. Mancini v. Township of Teaneck, 349 N.J.Super. 527, 556-60, 794 A.2d 185 (App.Div.2002). We affirmed the sexual harassment award and the trial court's remittitur of the retaliation damages award, and reinstated the punitive damages award in its entirety.
On September 5, 2002, the Supreme Court granted certification and summarily remanded the matter to us for reconsideration of our judgment in light of its August 7, 2002 decision in Shepherd v. Hunterdon Developmental Center, 174 N.J. 1, 803 A.2d 611 (2002). We presume the remand was because of our reliance on the Appellate Division decision in Shepherd, 336 N.J.Super. 395, 765 A.2d 217 (App.Div. 2001), in holding the continuing violation doctrine tolled the running of the statute of limitations on Mancini's LAD claim. As the Supreme Court had affirmed that principle, 174 N.J. at 7, 803 A.2d 611, on October 2, 2002, we reaffirmed our prior decision rejecting the statute of limitations time-bar arguments of defendants. Mancini v. Township of Teaneck, 354 N.J.Super. 282, 806 A.2d 842 (App.Div.2002).
In Shepherd the Court had also found there were material issues of fact such that summary judgment in the employer's favor was not appropriate on the employee's hostile work environment claims and the employer's defense of laches. 174 N.J. at 23-27, 803 A.2d 611.[3] However, on remand, *163 we did not address the issue of laches as it had not been raised by defendants other than in its initial pleadings and had not been addressed by the trial court or by defendants on appeal.
On October 29, 2002, defendants filed a second petition for certification and asserted, for the first time, the issue of laches. This limited remand followed.
Defendants contend a portion of Mancini's claim relating to conduct occurring in the 1980s is barred by the doctrine of laches because of the delay in bringing her action. In oral argument defense counsel suggested "anytime in the 1980s" would be a reasonable commencement date for the laches analysis because the officer knew of potential claims at that time. He noted for example, in 1985, when the union required the Department to provide the female officer with a separate locker facility, or in 1988, when the union arbitrated her grievance for receiving a selective and unprecedented written reprimand and loss of pay by Chief Burke for her subordinate not wearing his hat. Defendants request the matter be remanded for a new trial in which the evidence of discriminatory and retaliatory conduct would be limited to that commencing in June 1990, coincidentally the commencement of the six-year statute of limitations.[4]
Plaintiff contends defendants abandoned or waived the defense of laches by failing to raise the issue in any of the numerous motions before, during, or after trial and not identifying it as a defense for the court at trial, in the briefs on appeal, or in the initial petition for certification. Defendants concede they proceeded to trial, appeal, and their initial petition for certification on an unsuccessful statute of limitations defense, asserting there were discrete acts rather than a continuing course of conduct. They submit, however, that based on cases decided by the United States Supreme Court and our Supreme Court subsequent to our decision, their principal theory changed from statute of limitations to laches. They cite to National R.R. Passenger Corp. v. Morgan, a Title VII employment discrimination case in which the Court "observe[d] ... that employers may raise various defenses [such as laches] in the face of unreasonable and prejudicial delay" in filing suit. 536 U.S. 101, 122, 122 S.Ct. 2061, 2077, 153 L.Ed.2d 106, 127 (2002). They also cite to our Supreme Court's decision in Shepherd, supra, 174 N.J. at 21, 803 A.2d 611, decided August 2, 2002, and contend by the Court adopting the analytical framework of the continuing violation doctrine of Morgan, supra, it altered the framework for evaluating the time bar to a claim of continuing violation in a state LAD case and for the first time, recognized laches as a defense. Accordingly, defendants urge us to address an issue not raised below on the basis it is of sufficient public importance, see Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 230, 708 A.2d 401 (1998); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973), or was encompassed in a broad sense in their challenge to the limitations period, Docteroff v. Barra Corp. of Am., Inc., 282 N.J.Super. 230, 237, 659 A.2d 948 (App.Div.1995).
It appears to us that, at a minimum, defendants abandoned the equitable *164 defense of laches as asserted in their answer. We are not persuaded that laches had not been a viable defense in a hostile work environment case prior to Morgan and Shepherd or that Shepherd changed the analytical framework of a LAD case, thereby elevating this issue to a matter of great public interest. Nor is the rationale of Docteroff persuasive, as in that case plaintiffs had asserted a tolling defense to the four-year UCC statute of limitations and on appeal asserted the applicability of the six-year statute for contract claims. We held "we need not get caught up in the question concerning the extent to which plaintiffs have shifted gears or changed their position regarding the appropriate statute of limitations [b]ecause the issues before the trial judge dealt with whether the suit was timely and what the controlling limitations period was ..." Id. at 237, 659 A.2d 948. In the present case, defendants shifted from a legal to an equitable theory subsequent to an unsuccessful appeal without having offered evidence or made a factual record upon which the trial court or jury could have evaluated such defense. See Borough of Princeton v. Board of Chosen Freeholders, 169 N.J. 135, 157-58, 777 A.2d 19 (2001) (noting the factors to be considered in determining whether to apply laches include the length of delay, reasons for delay, and changing conditions of either or both parties during the delay).
Even if this defense had not been abandoned or waived, however, we find on the merits it is not an applicable remedy in this case. "Laches is an equitable defense that may be interposed in the absence of the statute of limitations," and is defined as "an inexcusable delay in asserting a right." Northwest Covenant Med. Ctr. v. Fishman, 167 N.J. 123, 140, 770 A.2d 233 (2001) (citations omitted). Laches time bars an action where the claimant unreasonably delays in filing a suit and as a result prejudices the rights of the party asserting the defense. Morgan, supra, 536 U.S. at 121-22, 122 S.Ct. at 2077, 153 L.Ed.2d at 127; Shepherd, supra, 174 N.J. at 23, 803 A.2d 611; Enfield v. FWL, Inc., 256 N.J.Super. 502, 520, 607 A.2d 685 (Ch. Div.1991), aff'd, 256 N.J.Super. 466, 607 A.2d 666 (App.Div.1992), certif. denied, 130 N.J. 9, 611 A.2d 648 (1992).
Defendants are again focusing on the fifteen-year period between the first discriminatory incident and the filing of the officer's complaint in urging that was an unreasonable delay sufficient to implicate a laches defense. The analysis we applied in our rejection of that argument in connection with the statute of limitations issue is equally compelling on the laches issue:
We disagree with defendants' focus on the number of years; rather, the focus should be on the pattern and frequency of the objectionable behavior and plaintiff's awareness, as a reasonable woman-police officer, of whether she had a viable claim. This is not a bright-line test; a particular court's use of the factors will vary according to the facts and procedural history of the case [citation omitted].
[Mancini, supra, 349 N.J.Super. at 557, 794 A.2d 185].
Moreover, defendants have not demonstrated that Mancini's delay in filing suit until 1996 caused them immeasurable harm or substantially prejudiced their position to justify precluding evidence of violations of LAD prior to 1990 under a laches theory. The second prong of laches requires more than merely the passage of time; it requires a showing of actual prejudice caused by the delay. It is insufficient that "the relevant supervisory hierarchy had been transformed," that Police Chief Burke retired from the Department in 1991, or that other supervisors had retired *165 by 1996. Furthermore, Captain Pinches' death on August 21, 1995 is irrelevant to defendants' pre-1990 laches claim in view of the fact that the record is replete with evidence as to his conduct thereafter:
(a) Detective Warren Blanco testified that in late 1989, he heard Pinches call plaintiff the white witch, id. at 543;
(b) Plaintiff testified that when the DARE program to which she had been assigned was canceled in 1990, Pinches told her she "was only playing with the kids and that wasn't a real cop's job," if she wanted to be a mother she should go home, and he transferred her to see if she could "do the job of a real cop," id. at 551;
(c) In February 1991, when plaintiff was promoted to detective-sergeant, she did not receive a gold shield and testified that Pinches told her she did not need a gold shield to put in her pocketbook, she did not need a badge to show to the students when she played with them, and she did not need a badge because she was just a woman going to school, id. at 552;
(d) On February 4, 1993, Pinches issued an order prohibiting a tour commander from taking an evening meal break during the captain's break which was referenced in a subsequent obscene cartoon depicting plaintiff, a tour commander, and Captain Hogan, her immediate supervisor, engaging in sex, id. at 540;
(e) In March and April 1994, Pinches issued directives banning graffiti, posters, drawings, and caricatures from headquarters, id. at 541;
(f) Defendant Police Chief Donald Giannone testified that in 1993 plaintiff complained to him that Pinches called her "dearie", id. at 543; and
(g) At the grievance hearing on February 17, 1994, Pinches admitted to Giannone that in 1993 he had made a sexually derogatory comment about plaintiff to another officer, id. at 543-44.
Nor does it have any bearing on defendants' laches claim that on cross-examination, Mancini indicated her memory at the time of trial in June 2000 may not have been "that good" regarding "dates and places." Mancini's testimony was very specific as to the sexually offensive and retaliatory acts of her colleagues and superiors, which was buttressed by other witnesses' recollections, admissions, and documentary and other evidence that had been placed in her mailbox over the thirteen-year period (the motel key, pair of panties, two sexually vulgar notes, and the obscene cartoon) to provide overwhelming evidence of a pattern of continuing LAD violations. Id. at 560-61, 794 A.2d 185.
The central issue in determining whether the laches doctrine bars a lawsuit "is whether it is inequitable to permit the claim to be enforced." Lavin v. Hackensack Bd. of Educ., 90 N.J. 145, 152-53, 447 A.2d 516 (1982). We find the equities in this case weigh in favor of upholding the aggrieved officer's right to present evidence of defendants' continuing discriminatory and retaliatory course of conduct from the inception of Mancini's employment through trial.
We have already found that defendants' conduct towards Mancini constituted a continuing violation rather than the occurrence of isolated, sporadic or discrete acts for statute of limitations purposes. Mancini, supra, 349 N.J.Super. at 556, 794 A.2d 185. We also found that "[b]ecause she was the first female police officer in the Department, she expected certain unfairness so she should not be required to have known that the level of harassment she experienced constituted an actionable claim as of 1985, 1987, or 1988." Id. at 560, 794 A.2d 185.
*166 There is even less of a policy reason for reaching a different result under the equitable doctrine of laches. The wisdom of those cases which have recognized a cause of action for a hostile work environment based on a continuing violation accruing on the date of the last act in the pattern or series of acts that comprise the continuing violation claim, Shepherd, supra, 174 N.J. at 21-22, 803 A.2d 611, rests upon the fact they advance the public policy of deterring a defendant from continuing a pattern of objectionable behavior. To apply laches under these circumstances where "[p]laintiff was subjected to a continuing escalating pattern of gender-based harassment by multiple individuals in the Department" which "continued into the 1990's without any periods of respite" and such conduct did not abate even up to and after the filing of the complaint, would fly in the face of the fundamental predicates of this equitable defense. Mancini, supra, 349 N.J.Super. at 559, 794 A.2d 185.
The extent of defendants' unclean hands is particularly apparent in our conclusions in reinstating the punitive damage award:
The jury verdict [awarding punitive damages] was in direct response to the evidence presented in light of credibility assessments. It is clear to us that the jury drew the inescapable conclusion that despite specific and repeated notice by plaintiff and other women in the department of sexually offensive comments and inappropriate gestures by subordinates and superiors alike; and the shocking pervasiveness of sexually-explicit cartoons, pornographic magazines, and videos in the Department, the Township and Police Department "just did not get it" and did nothing to curtail or prevent sexual harassment from occurring.... The record is replete with evidence of a continuing, escalating pattern of gender-based harassment and retaliatory conduct that management both participated in and encouraged by indifference.... It is inexcusable ... that a qualified law enforcement officer who rose to the rank of lieutenant by scoring number one on an objective examination, was forced to endure such egregious behavior for close to twenty years.

[Emphasis added, id. at 568-69, 794 A.2d 185].
Defendants have failed to establish that Mancini unreasonably delayed in filing suit and that they were prejudiced as a result. Thus, there is no basis to implicate the equitable defense of laches and remand for a new trial with Mancini's LAD proofs limited to conduct occurring after June 1990. Accordingly, we reaffirm the judgment of the trial court, except as modified in our prior decision.
NOTES
[1] Fictitiously-named defendants have been eliminated from the caption.
[2] On January 6, 2000, the trial court granted defendants' motion for summary judgment dismissing Mancini's intentional infliction of emotional distress claim, which was not appealed.
[3] On the issue of laches, the Court stated:

We would envision such a defense to be applicable when an aggrieved party, with knowledge of a claim based on non-discrete acts, waits a considerable period before filing suit. [citation omitted]. Here, plaintiffs commenced their Law Division action two years and twenty-six days after their February 1, 1995, letters to the superintendent. We cannot conclude as a matter of law that the filing of plaintiffs' complaint within that time frame is sufficient to implicate a laches defense.
[174 N.J. at 23, 803 A.2d 611].
[4] The operative facts predate Montells v. Haynes, 133 N.J. 282, 627 A.2d 654 (1993).