846 A.2d 596

DIANE MANCINI, PLAINTIFF–RESPONDENT, AND LAUREN FLORIO, PLAINTIFF, v. TOWNSHIP OF TEANECK, TEANECK POLICE DEPARTMENT, DONALD GIANNONE, INDIVIDUALLY AND IN HIS CAPACITY AS CHIEF OF THE TEANECK POLICE DEPARTMENT AND WARREN WHITE, INDIVIDUALLY AND IN HIS CAPACITY AS CAPTAIN IN THE TEANECK POLICE DEPARTMENT, DEFENDANTS–APPELLANTS, AND JOHN DOES 1–5, DEFENDANTS.

Argued January 5, 2004—Decided April 28, 2004.

*Barry L. Asen* argued the cause for appellants (*Epstein Becker & Green,* attorneys).

*Cathy Fleming* argued the cause for respondent (*Edwards & Angell,* attorneys; *Ms. Fleming and Harold J. Ruvoldt, Jr.,* on the brief).

Justice VERNIERO delivered the opinion of the Court.

In *Shepherd v. Hunterdon Developmental Center,* this Court considered the timeliness of certain employment-discrimination claims within the context of the continuing violation doctrine, an equitable exception to the statute of limitations. 174 *N.J.* 1, 803 *A.*2d 611 (2002). Within that same framework, we also confirmed that the defense of laches is available to a defendant when a plaintiff, in particular circumstances, "waits a considerable period before filing suit." *Id.* at 23, 803 *A.*2d 611. This case provides us with the opportunity to expand on that analysis. In so doing, we hold that, although laches might have been a legitimate defense, defendants abandoned it during this litigation's lengthy history. We thus affirm the Appellate Division's rejection of the defense. As for a remaining question concerning the trial court's admission of certain evidence described below, we also affirm.

I.

The facts of the case are well summarized in *Mancini v. Township of Teaneck,* 349 *N.J.Super.* 527, 794 *A.*2d 185 (App.Div. 2002) (*Mancini* I), and do not need to be repeated here. Suffice it to say that plaintiff Diane Mancini successfully argued to a jury that, as the first female police officer hired by the Teaneck Police Department (Department), she had been subjected to deplorable work conditions, which included acts of sexual harassment by many of her fellow officers. The improper treatment began in 1981, the year that she was hired, and continued over the ensuing years.

Plaintiff filed a multi-count complaint in 1996, alleging sexual harassment, sex discrimination, and retaliation in violation of the Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –49, as well as intentional infliction of emotional distress. She included as defendants the Department, the Township of Teaneck, and two individual officers. By the time plaintiff had filed her complaint, one of her fellow officers referenced in that complaint had retired, and one officer had died.

The matter proceeded to trial. In one of its evidentiary rulings, the trial court admitted evidence concerning whether one of the defendants had harassed women at the Department other than plaintiff. The court made that ruling concerning the "other harassment" evidence, notwithstanding that "plaintiff did not witness this alleged harassment and was not aware of it when it occurred." *Mancini* I, *supra,* 349 *N.J.Super.* at 562, 794 *A.*2d 185.

The jury found for plaintiff, awarding $1 million in compensatory damages and $500,000 in punitive damages. The trial court reduced the compensatory damages amount to $625,000 and vacated the punitive damages award in its entirety.

On appeal, defendants raised several issues. Most relevant for our purposes here, they challenged the trial court's determination that plaintiff had presented sufficient proof to permit the jury to consider her continuing violation claim. Defendants also argued that the trial court had erred in admitting the "other harassment" evidence. The Appellate Division rejected those contentions and affirmed the trial court's reduction of compensatory damages but reinstated the punitive damages award. *Id.* at 569, 794 *A.*2d 185. Although in answering the complaint defendants had asserted the doctrine of laches as an affirmative defense, they did not explicitly raise that defense before either the trial court or Appellate Division. As a result, neither court initially addressed the issue.

We granted defendants' petition for certification, 174 *N.J.* 359, 807 *A.*2d 192 (2002), and summarily remanded the matter to the Appellate Division for reconsideration of its judgment in view of

our decision in *Shepherd,* which we decided after *Mancini* I. Our remand order was general in nature and did not specify laches as a subject for review. (Although defendants did not explicitly raise laches when they initially filed the petition, they did raise the subject in a subsequent letter to the Court. Under that circumstance, we will consider the issue as having been included in defendants' first petition.) On reconsideration, the Appellate Division affirmed its prior judgment but did not address the laches question. *Mancini v. Township of Teaneck,* 354 *N.J.Super.* 282, 806 *A.*2d 842 (2002) *(Mancini* II).

Defendants sought our review by filing a second petition for certification. We granted that petition, 175 *N.J.* 545, 816 *A.*2d 1047 (2003), and again summarily remanded the matter to the Appellate Division. Unlike our first order, the second remand order was specific in nature, directing the court to reconsider "its judgment in the light of the arguments of the parties in respect of the defense of laches." *Ibid.*

The Appellate Division affirmed its original disposition, concluding that laches was not a bar to recovery for two reasons. First, the panel determined "that, at a minimum, defendants [had] abandoned the equitable defense of laches as asserted in their answer." *Mancini v. Township of Teaneck,* 360 *N.J.Super.* 575, 581, 824 *A.*2d 160 (App.Div.2003) *(Mancini* III). Second, the court found that "[e]ven if this defense had not been abandoned or waived ... on the merits it is not an applicable remedy in this case." *Id.* at 582, 824 *A.*2d 160. We granted defendants' third petition for certification, 177 *N.J.* 575, 832 *A.*2d 325 (2003), limited to the laches issue and the "other harassment" evidentiary issue.

II.

A.

To place the laches defense in its proper context, we first must describe the continuing violation exception to the statute of limitations. Under that exception, "a plaintiff may pursue a claim

for discriminatory conduct if he or she can demonstrate that each asserted act by a defendant is part of a pattern and at least one of those acts occurred within the statutory limitations period." *Shepherd, supra,* 174 *N.J.* at 6–7, 803 *A.*2d 611. By definition, the continuing violation doctrine exposes a defendant to liability for acts that, standing alone, might have occurred outside the limitations period. *Id.* at 17–18, 803 *A.*2d 611. The statute of limitations for a LAD action is two years. *Montells v. Haynes,* 133 *N.J.* 282, 292, 627 *A.*2d 654 (1993).

In *National Railroad Passenger Corp. v. Morgan,* the United States Supreme Court applied the continuing violation doctrine to uphold as timely an employee's discrimination action brought under federal law. 536 *U.S.* 101, 122 *S.Ct.* 2061, 153 *L.Ed.*2d 106 (2002). In so doing, it distinguished between "discrete" discriminatory acts, such as wrongful terminations, and acts concerning unlawful employment practices, which "cannot be said to occur on any particular day." *Id.* at 115, 122 *S.Ct.* at 2073, 153 *L.Ed.*2d at 123. The Court explained that "in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative affect of individual acts." *Ibid.* (internal citation omitted).

The *Morgan* Court acknowledged that the continuing violation doctrine could render actionable "claims that extend over long periods of time." *Id.* at 121, 122 *S.Ct.* at 2076, 153 *L.Ed.*2d at 127. In that respect, the Court observed:

Employers have recourse when a plaintiff unreasonably delays filing a charge.

. . . .

In addition to other equitable defenses [ ] an employer may raise a laches defense, which bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant. This defense requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.

[*Id.* at 121–22, 122 *S.Ct.* at 2076–77, 153 *L.Ed.*2d at 127 (internal quotation marks and citation omitted).]

In *Shepherd, supra,* we decided to "apply *Morgan's* analytical framework when evaluating a state cause of action under the LAD." 174 *N.J.* at 20, 803 *A.*2d 611. Such application, we concluded, would be consistent with our prior jurisprudence as reflected in an earlier opinion of this Court. *Id.* at 21, 803 *A.*2d 611 (citing *Wilson v. Wal–Mart Stores,* 158 *N.J.* 263, 272–74, 729 *A.*2d 1006 (1999)). We echoed *Morgan's* observation regarding the availability of a laches defense within the context of a continuing violation claim. *Id.* at 22–23, 803 *A.*2d 611. The Court indicated that it "would envision such a defense to be applicable when an aggrieved party, with knowledge of a claim based on non-discrete acts, waits a considerable period before filing suit." *Id.* at 23, 803 *A.*2d 611. Because the facts in *Shepherd* clearly were insufficient to support a laches defense, see *ibid.,* our discussion of the subject was relatively brief.

█ Expanding on that discussion now, we note that typically we consider laches "in the absence of the statute of limitations[.]" *Borough of Princeton v. Board of Chosen Freeholders,* 169 *N.J.* 135, 157, 777 *A.*2d 19 (2001) (internal quotation marks and citation omitted). However, the doctrine is available as a defense in a LAD action, even though a defined limitations period governs the LAD. That makes analytical sense because, as already noted, a continuing violation claim exposes a defendant to liability for acts that, standing alone, would fall outside the statute of limitations.

Moreover, this Court previously has recognized that a laches defense might apply in an action involving an explicit statute of limitations. See *Lavin v. Hackensack Bd. of Educ.,* 90 *N.J.* 145, 152 n. 1, 447 *A.*2d 516 (1982) (observing that, "[b]ecause laches is an equitable principle aimed to promote justice, conditions or circumstances may make it inequitable to prosecute a claim after a period shorter than that fixed by the statute of limitations"). Against that backdrop, *Shepherd* confirmed that an equitable laches defense is available in an action that otherwise has been rendered timely by virtue of the continuing violation doctrine.

## B.

■ We turn to the case at hand. Procedurally, to maintain a laches defense against a plaintiff's delayed claim, a defendant must assert the defense in a diligent fashion. In other words, diligence is a two-way street. A mere one-time mention of laches in a defendant's answer is insufficient to preserve it through the span of litigation. See *Williams v. Bell Tel. Labs. Inc.*, 132 *N.J.* 109, 118, 623 *A.*2d 234 (1993) (observing that litigant in that case "had waived the statute-of-limitations defense by its failure to assert that defense at any stage of the proceedings after pleading the statute in its Answer").

■ We concur with the Appellate Division that "defendants abandoned the equitable defense of laches as asserted in their answer." *Mancini* III, *supra,* 360 *N.J.Super.* at 581, 824 *A.*2d 160. Urging a contrary conclusion, defendants contend that the laches defense was not available in continuing violation cases until *Morgan* and *Shepherd* each recognized it. We disagree. In confirming the existence of laches within the continuing violation framework, the Supreme Court relied on settled legal principles. See *Morgan, supra,* 536 *U.S.* at 121–22, 122 *S.Ct.* at 2076, 153 *L.Ed.*2d at 127. We did the same in *Shepherd, supra,* 174 *N.J.* at 22–23, 803 *A.*2d 611. Nowhere in *Shepherd* did we state that the doctrine itself reflected a new rule of law.

As important, defendants' contention is belied by the fact that they interposed the defense in their initial answer dated August 6, 1996, well before *Morgan* and *Shepherd* were decided. We assume that, under our notice-pleading rules, defendants asserted laches in good faith, believing it to be a colorable and valid defense. See *R.* 4:5–4 (requiring laches to be pled specifically in responsive pleading). Thus, even if the laches doctrine was not well defined until *Morgan* and *Shepherd,* its assertion as an affirmative defense obligated defendants to do more than merely cite it in an answer. In short, defendants' arguing laches explicitly for the first time in its petition for certification was insufficient to preserve the issue during this litigation's lengthy history.

That defendants maintained a defense based on the statute of limitations does not alter our analysis. We acknowledge that a laches defense and a limitations defense are similar in some respects. For example, both defenses implicate a plaintiff's delay in filing suit. They differ, however, within the context of a continuing violation claim, especially in terms of a plaintiff's awareness of actionable conduct. In *Shepherd, supra,* we explained: "[A] victim's knowledge of a claim is insufficient to start the limitations clock so long as the defendant continues the series of non-discrete acts on which the claim as a whole is based.... [A] victim's knowledge becomes relevant within the framework of an employer's laches defense." 174 *N.J.* at 22, 803 *A.*2d 611.

Those differences require a defendant to delineate the two defenses and establish a record in support of each contention. As more fully explained below, one method of establishing such a record would be for the trial court to conduct a hearing similar to the hearings traditionally held when reviewing a statute-of-limitations defense. We agree with the Appellate Division, see *Mancini* III, *supra,* 360 *N.J.Super.* at 582, 824 *A.*2d 160, that defendants here did not make an adequate factual record on which to evaluate a laches defense, a defense that they claim warrants elimination of the jury's verdict. For the reasons already stated, we are satisfied that defendants abandoned or waived the opportunity to seek that relief.

The remaining issue requires only brief discussion. Defendants challenge the trial court's evidentiary ruling concerning whether one of the defendants harassed women at the Department other than plaintiff. Defendants assert that the trial court improperly admitted such "other harassment" evidence because plaintiff was neither a witness to the conduct nor aware of it when it allegedly had occurred. We affirm essentially for the reasons expressed by the Appellate Division in *Mancini* I, *supra,* 349 *N.J.Super.* at 562–63, 794 *A.*2d 185. In that opinion, written by Judge Axelrad, the panel succinctly described the relevance of the challenged evidence "to show defendants' motives, attitudes, and intentions."

*Id.* at 563, 794 *A.*2d 185. The panel correctly concluded that the trial court did not abuse its discretion in permitting the evidence to be presented before the jury. *Id.* at 562, 794 *A.*2d 185.

### III.

Although no further discussion is necessary to dispose of this appeal, we offer these observations to provide guidance to trial courts and future litigants. The risk to a defendant of having to defend against stale claims under the continuing violation doctrine is greater than the risk attendant in more traditional lawsuits. The availability of a laches defense encourages victims to pursue their claims diligently, which creates a fairer process for accused wrongdoers. But other reasons exist to support the swift adjudication of claims. Left unchallenged, sexual harassment not only injures individual victims but also denigrates the entire workplace. From that perspective, all innocent employees benefit when a timely complaint is brought to eradicate discriminatory employment practices.

Conversely, the system is ill served when a plaintiff delays in asserting a legitimate claim. In that regard, we cannot improve on Justice Pollock's observations:

> Evidence of discrimination, especially proof of sexual discrimination, is vulnerable to the passage of time. With racial slurs, insults about sexual orientation, or sexually-suggestive remarks, the proof generally depends on testimonial evidence. Depending on the memory and availability of witnesses, that testimony can dissipate or even disappear over time. Sexual harassment, which often occurs in private, presents special problems. A sexual-harassment claim often implicates the credibility of both the accuser and the accused, requiring a decision about who is telling the truth. That decision becomes harder with the passage of time. Fairness to the accuser, the accused, and to the judicial system require a timely adjudication of discrimination claims.
>
> [*Montells, supra,* 133 *N.J.* at 293, 627 *A.*2d 654.]

The above policy considerations form the context within which we measure a laches defense. The defense operates to bar a plaintiff from prosecuting all or part of an action based on acts occurring months or years earlier, even when those acts properly would be included in a continuing violation claim. When evaluat-

ing a laches defense in that situation, we consider three factors as being especially relevant. They are: (1) whether an alleged act is unreasonably distant in time, (2) whether a plaintiff knew or should have known of a valid claim based on that act, and (3) whether the plaintiff's delay in filing a claim has caused undue prejudice to a defendant. *Morgan, supra,* 536 *U.S.* at 121–22, 122 *S.Ct.* at 2077, 153 *L.Ed.*2d at 127; *Shepherd, supra,* 174 *N.J.* at 23, 803 *A.*2d 611.

■ Consistent with the equitable nature of laches, no one factor controls the analysis, and some factors are interrelated. For example, whether an act is "unreasonably distant" might turn on the extent to which formulating a claim on that act causes prejudice to the defendant. When evaluating prejudice itself, courts should consider, among other things, the loss of evidence in support of a defendant's position and the unavailability of critical witnesses. *Jeffries v. Chicago Transit Auth.,* 770 *F.*2d 676, 680–81 (7th Cir.1985), *cert. denied,* 475 *U.S.* 1050, 106 *S.Ct.* 1273, 89 *L.Ed.*2d 581 (1986).

■ More broadly, "[w]hether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court." *Garrett v. General Motors Corp.,* 844 *F.*2d 559, 562 (8th Cir.), *cert. denied,* 488 *U.S.* 908, 109 *S.Ct.* 259, 102 *L.Ed.*2d 248 (1988). A trial court often is asked to evaluate a statute-of-limitations defense and in so doing, will review the circumstances surrounding a plaintiff's delay in filing suit. It sometimes undertakes that review by conducting what is known as a *Lopez* hearing. See *Lopez v. Swyer,* 62 *N.J.* 267, 274–76, 300 *A.*2d 563 (1973). When appropriate, trial courts should utilize the same procedure in respect of a laches defense.

As additional guidance, we note the following. The Appellate Division suggested that applying laches when a defendant has engaged in a pattern of objectionable behavior "would fly in the face of the fundamental predicates of this equitable defense." *Mancini* III, *supra,* 360 *N.J.Super.* at 585, 824 *A.*2d 160. That suggestion troubles us. A continuing violation claim always in-

volves a pattern of objectionable behavior. Eliminating the availability of laches under those circumstances arguably would eliminate it for all continuing violation claims. Thus, the Appellate Division's statement, when viewed expansively, appears inconsistent with *Morgan* and *Shepherd.*

By the same token, a continuing violation analysis contemplates that a plaintiff has delayed filing suit given the nature of the claim itself. The correct implication is that such delay, absent other factors, ordinarily would not be sufficient to implicate a laches bar. That is consistent with the general principle that the defense of "laches involves more than mere delay, mere lapse of time. There must be delay for a length of time which, unexplained and unexcused, is unreasonable under the circumstances and has been prejudicial to the other party." *Northwest Covenant Med. Ctr. v. Fishman,* 167 *N.J.* 123, 140, 770 *A.*2d 233 (2001) (internal quotation marks and citation omitted). The essential point is that we view a plaintiff's delay and any other relevant factor not in isolation but within the above-noted, multi-factor framework.

The Supreme Court stated in *Morgan, supra,* that it was not addressing "what consequences follow if laches is established." 536 *U.S.* at 122, 122 *S.Ct.* at 2077, 153 *L.Ed.*2d at 127 (internal quotation marks and citation omitted). That statement implies that some aspect of a continuing violation claim might survive a valid laches defense. For example, in addition to acts allegedly committed years before trial, a pattern of conduct also might include acts committed less distant in time. If the equities so require, a trial court can exclude the unreasonably distant acts while permitting a claim (assuming it is otherwise actionable) based on more recent acts. *Cf. EEOC v. Great Atl. & Pac. Tea Co.,* 735 *F.*2d 69, 81 (3d Cir.) (suggesting that even when court finds elements of laches, it "must take into account whether or not a less drastic form of equitable relief than a complete dismissal of the action [is] more appropriate"), *cert. dismissed,* 469 *U.S.* 925, 105 *S.Ct.* 307, 83 *L.Ed.*2d 241 (1984).

Although *Lavin, supra,* 90 *N.J.* 145, 447 *A.*2d 516, did not involve a continuing violation claim like the claim in this case, it did result in a partial remedy for the plaintiff, notwithstanding that laches had barred a portion of the plaintiff's claim. Specifically, the teacher-plaintiff contended that, pursuant to statute, her prior military service had entitled her to "three years' military credit for salary claims retroactive to her initial employment in 1968." *Id.* at 148, 447 *A.*2d 516. She did not petition her employer for such credit until October 1977, nine years after she otherwise would have been entitled to it. *Ibid.* We held that, although laches was a bar to the retroactive application of the sought-after credit, it was "appropriate to allow prospective application of the [plaintiff's] military credit as of September 1978." *Id.* at 155, 447 *A.*2d 516. Thus, *Lavin* is instructive to the extent that it demonstrates that a successful laches defense does not always result in a complete bar to relief.

As the foregoing discussion illustrates, applying laches in these circumstances involves subtleties not usually found in cases arising under the LAD. We cannot avoid that reality in view of the complex nature of the continuing violation doctrine. See *Shepherd, supra,* 174 *N.J.* at 18, 803 *A.*2d 611 (observing that "[s]eemingly straightforward in design, the [continuing violation] doctrine is not always straightforward in its application"); Thelma A. Crivens, *The Continuing Violation Theory and Systemic Discrimination: In Search of a Judicial Standard for Timely Filing,* 41 *Vand. L. Rev.* 1171, 1172 (1988) (stating that continuing violation theory is "considered to be one of the most confusing theories in employment discrimination law"). Nevertheless, we are confident that, when exercising their discretion, trial courts will seek to apply these concepts properly and fairly, within the analytical framework to which we have adverted.

## IV.

In sum, although an earlier commencement of plaintiff's suit would have been beneficial to the system as a whole and strongly

preferred, we are persuaded that the Appellate Division correctly rejected defendants' laches defense on procedural grounds. No further analysis is needed to dispose of that issue in this appeal. Our decision not to address the merits of the defense represents a modification of the judgment below. Regarding the "other harassment" evidentiary question, we affirm the determination of the Appellate Division substantially for the reasons expressed in that court's opinion in *Mancini* I, *supra*, 349 *N.J.Super.* at 562–63, 794 *A.*2d 185.

As modified, the judgment of the Appellate Division is affirmed.

*For affirmance as modified*—Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN and WALLACE—7.

*Opposed*—None.