**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3648-18T1

ROBERT ZIENIUK,

     Plaintiff-Respondent,

v.

RUDOLPH ANTHONY MICKLES,

     Defendant/Third-Party
     Plaintiff-Appellant,

v.

LAW OFFICES OF MICHAEL D.
MILLER and MICHAEL D. MILLER,
ESQUIRE,

     Third-Party Defendants.

_____

        Submitted May 4, 2020 – Decided July 17, 2020

        Before Judges Moynihan and Mitterhoff.

        On appeal from the Superior Court of New Jersey, Law
        Division, Camden County, Docket No. L-3013-11.

        Richard B. Supnick, attorney for appellant.

Helmer Conley & Kasselman, PA, attorneys for respondent (Michael D. Miller, of counsel and on the brief).

PER CURIAM

In this partnership dissolution matter, defendant Rudolph Anthony Mickles appeals from two March 15, 2019 orders. The first order denied defendant's motion for a determination of the distribution of partnership assets pursuant to the dissolution provisions of the New Jersey Uniform Partnership Act (UPA), N.J.S.A. 42:1A-39 to -45. The second order granted plaintiff Robert Zieniuk's motion to require the court-appointed receiver, Robert A. Gleaner, Esq., to turn over the partnership assets to plaintiff's attorney, Michael D. Miller.[1] In deciding these motions, the judge acknowledged that defendant's argument may have merit but concluded that because of the substantial delay in raising the issue, the doctrine of laches barred its consideration.

This matter has a long and tortured history. In 1998, plaintiff and defendant formed a partnership to rent property to various tenants. When plaintiff asked defendant for his share of the rental profits and an inspection of the accounting records, defendant claimed they had never been partners.

---

[1] Miller is also a third-party defendant, but his role as a third-party defendant is less significant, so we refer to him as plaintiff's attorney.

Litigation began in 2008, and in 2012, plaintiff was awarded rental income, his attorney was awarded fees, and the parties agreed to dissolve and liquidate the partnership. Litigation has continued since then, and the matter is now before us after the receiver liquidated the partnership property. Having reviewed the history of this matter, and in light of the applicable law, we affirm.

We discern the following facts from the record. In 1998, plaintiff and defendant became partners in a real estate venture, and they agreed to share equally in the partnership's profits and losses. Their agreement required that "[t]he partnership . . . maintain adequate accounting records" and granted each partner the right to access and inspect "[a]ll books, records, and accounts of the partnership . . . at all times."

The partnership property consisted of a building that was purchased for $36,000 and subsequently used as a rental property. According to plaintiff, he contributed $4000 toward the purchase, and he and his family performed significant work to renovate the property, but the property was titled in defendant's name because plaintiff had bad credit.

On June 27, 2007, plaintiff's attorney wrote to defendant, stating that plaintiff had not received any funds representing his proceeds from the partnership and requesting that defendant provide an accounting of the

3

partnership's records. When defendant failed to respond, plaintiff filed his first lawsuit against defendant, in the Special Civil Part. After a trial on September 15, 2008, Judge Michael J. Kassel found that a 50/50 partnership existed, and the partnership property was then worth at least $66,000 and had generated at least $30,000 in profits. He awarded plaintiff $15,000 and stated, "That ends the relationship. That's the jurisdiction limit of the Special Civil Part." Defendant paid plaintiff the $15,000.

In August 2009, plaintiff filed his second lawsuit against defendant, in the Special Civil Part, again seeking an order to allow an inspection of the partnership's accounting records and to award plaintiff his share of the rental profits. Defendant answered and filed a counterclaim, alleging frivolous litigation and seeking damages of $15,000, plus attorney's fees. According to several letters plaintiff's attorney wrote to defendant, the parties conferenced with Judge Lee B. Laskin in June 2010, where plaintiff agreed to dismiss his complaint, and the parties agreed to dissolve the partnership by obtaining a property appraisal and equitably dividing the partnership assets. Plaintiff's attorney followed up with defendant several times but received no response.

In June 2011, plaintiff filed his third lawsuit, which eventually led to the present matter on appeal. Plaintiff again sought an order allowing an inspection

of the partnership's accounting records and awarding him fifty percent of the partnership's rental profits, and he requested that defendant obtain a property appraisal. He also asked for a court-ordered partnership dissolution. Defendant answered, continuing to deny the partnership's existence, and he filed a third-party complaint against plaintiff's attorney, primarily alleging malicious abuse of process.[2]

On August 6, 2012, an arbitrator awarded plaintiff $29,900 in rental income, for the period of October 2008 through July 2012, and he awarded plaintiff's attorney $5000 in fees for defendant's frivolous third-party complaint. He also ordered the parties to dissolve the partnership, liquidate the partnership assets, and divide the proceeds equally. Neither defendant nor his attorney appeared at the hearing because his attorney calendared the wrong date.

On September 14, 2012, defendant moved to set aside the arbitration award and requested a trial de novo, claiming plaintiff failed to exchange arbitration statements and arguing that an earlier judgment had satisfied plaintiff's claim.

---

[2] To assist in these filings, defendant hired a new attorney to represent him, and this representation continued through some time in 2017, at which point defendant hired his current attorney.

A-3648-18T1

A week later, plaintiff moved to confirm the arbitration award, and on November 16, 2012, Judge Louis R. Meloni confirmed the award and ordered the parties to obtain a property appraisal and list the property for sale. The judge explained that defendant failed to timely request a trial de novo and added that in filing his third lawsuit, plaintiff was not getting "three bites of the apple." Defendant appealed, but his appeal was dismissed because he failed to file a timely brief.

After confirmation of the award, plaintiff's attorney wrote to defendant three times, requesting that he pay plaintiff and plaintiff's attorney in accordance with the November 16, 2012 order, complete the required information subpoena, and provide plaintiff's appraiser with access to the property. Neither plaintiff nor his attorney received a response, so on October 23, 2013, plaintiff moved to hold defendant and his attorney in contempt of court. On November 8, 2013, Judge Anthony M. Pugliese granted plaintiff's motion and further awarded plaintiff an additional $10,400 in rental fees, awarded plaintiff's attorney $1500 in fees, and imposed sanctions against defendant's attorney for $1000. He denied defendant's motion for reconsideration in January 2014.

Defendant appealed, and we reversed. Zienuik [sic] v. Mickles, No. A-2385-13 (App. Div. May 12, 2015). We acknowledged

the level of frustration experienced by plaintiff's counsel and the court as to defendant's and [his attorney's] failure to appear at the arbitration, file a timely trial de novo, oppose the contempt motion, follow through with the appeal from the November 16, 2012 order, and otherwise demonstrate reasonable efforts to appraise the building for sale.

[Id. at 2.]

However, we found that the judge did not comply with the rules for summary contempt proceedings, so we reversed the contempt order. Id. at 1, 2-3. Similarly, we reversed the sanctions and fees awards because the judge did not state his legal conclusions on the record. Id. at 4. We also set aside the award of additional rental fees, as there was insufficient evidence to support the award. Ibid. Lastly, we addressed another meritless argument raised by defendant:

Finally, as to the third argument, raised for the first time on this appeal, that res judicata barred the court from entering the November 16, 2012 order confirming the arbitration award, the soundness of the November 16, 2012 order is not before us. The time to make that argument was before the court in the second lawsuit or on appeal from that order. Although defendant had initially appealed from the November 16, 2012 order, he failed to file a brief resulting in dismissal of that appeal.

[Id. at 5.]

On May 27, 2015, plaintiff filed a notice of motion for post-judgment discovery, again requesting access to the property and the partnership's

7

accounting records. Defendant filed a cross-motion for relief from the November 16, 2012 order confirming the arbitration award, under Rule 4:50-1. On June 26, 2015, Judge Pugliese granted plaintiff's motion.

Defendant appealed, and we affirmed. Zieniuk v. Mickles, No. A-5498-14 (App. Div. Jan. 18, 2017). Because defendant moved for relief from the November 16, 2012 order "about three years" after Judge Meloni confirmed the arbitration award, we concluded he was time-barred from seeking relief. Id. at 3. Nevertheless, we rejected his contention that the arbitration award conflicted with the September 2008 judgment:

> The judgments do not conflict. The first lawsuit's $15,000 judgment represented plaintiff's interest in the building, not rental income from the building, and it was unclear whether it formally dissolved the partnership. Because of the ambiguity, in June 2010, the parties mutually agreed that they would dissolve the partnership and obtain an appraisal of the property in exchange for the dismissal of the second lawsuit without prejudice.
>
> Plaintiff filed his third lawsuit due to defendant's failure to appraise the property. The court ordered arbitration and the arbitrator formally dissolved the partnership, awarded plaintiff $29,900 in rental income, and awarded plaintiff's counsel $5000. The arbitrator did not award value in the property, but awarded the rental income generated.
>
> [Id. at 4.]

On February 2, 2017, plaintiff filed a notice of motion for appointment of a receiver to collect the November 16, 2012 judgment. On March 20, 2017, Judge Pugliese appointed a receiver and ordered defendant to pay all costs the receiver incurred. On October 27, 2017, Judge Pugliese granted the receiver the authority to retain a property management company and real estate agent and to sign any documents necessary to sell the property. He also awarded plaintiff damages for lost rentals and plaintiff's attorney for legal fees, and he sanctioned defendant's attorney. Defendant retained his current attorney and appealed.[3]

In December 2017, the parties met with the receiver, and defendant began to provide documentation regarding leases, violation notices, and property expenses. Defendant initially arranged the property listing, but in September 2018, the receiver terminated that listing and relisted with another realtor. In November 2018, he sold the property to a third party for about $90,000. The sale generated net proceeds of $84,320.20, before accounting for the receiver's fee of $7800.

---

[3] Pursuant to a March 19, 2018 consent order signed by Judge Pugliese, the parties agreed to void only the provision in the October 27, 2017 order that increased the judgment for additional rent, fees, and sanctions, and they agreed to dismiss the appeal.

On January 16, 2019, plaintiff moved to compel the receiver to turn over the net proceeds from the property sale to plaintiff's attorney. Plaintiff only served notice upon the receiver. Two days later, plaintiff's attorney wrote to Judge Pugliese, requesting approval of a revised order agreed to by plaintiff and the receiver, and the judge signed the order. The same day, defendant learned of the order and plaintiff's motion and wrote to the judge, explaining that he, plaintiff, and the receiver agreed that the matter should be heard before entry of an order. The judge vacated his January 18 order.

On February 5, 2019, defendant filed a cross-motion to settle the partnership accounts and determine the proper distribution of the net proceeds from the property sale in accordance with the dissolution provisions of the UPA. He attached an Excel spreadsheet displaying a profit and loss statement for the property, and he provided various loan documents and invoices for contributions made to maintain and repair the property.

On March 15, 2019, Judge Pugliese heard oral argument and issued an oral decision. He acknowledged defendant's argument that much of the delay over the years was caused by his former attorney. However, he explained, "[A]t some point in time it is the litigant's case and the litigant has a responsibility," especially after defendant's former attorney was no longer representing him.

Further, defendant "showed himself to be an uncooperative sort that was going to ignore discovery requests, ignore orders demanding discovery requests, [and] ignore direct orders of the [c]ourt." The judge could not "separate [defendant's] failures to provide information from his attorney[']s."

"[W]hile [defendant's current attorney] has come forward and done a professional job in terms of presenting at this late date what [defendant] indicates are his contributions to the property, . . . it is late." Had defendant provided the documents sooner, "they would have been subjected to the scrutiny of the discovery process." However, defendant chose to wait until a time when it might be difficult or impossible to challenge the veracity of the documents. The judge indicated, "[I]t's almost as if [defendant] tried to pull off some ingenious plan." Therefore, "this [was] precisely the type of case where the equitable doctrine of laches attaches." Although defendant "very well may have had legitimate credits, legitimate repairs made, [and] legitimate expenses, things that would have gone into his capital account," it would be inequitable to allow him to benefit from his constant resistance and obstruction. The judge added that "it [was] interesting that [defendant's current application] only happened . . . at the point in time when the property was finally sold and the money was sitting in the bank account."

Accordingly, the judge denied defendant's application for a determination of distributions in accordance with the UPA and ordered the receiver to turn over the appropriate funds to plaintiff. Plaintiff was awarded $77,060.10[4] and the receiver was awarded his $7800 fee. Because these amounts exceeded the net proceeds of the property sale, defendant was required to pay plaintiff the balance of $539.90. The judge signed two orders later that day, memorializing his decision. This appeal ensued.

On appeal, defendant argues that his delay in seeking the relief at issue is excusable due to "the apparent malfeasance" of his former attorney; the length of time matters were pending in the Appellate Division, one of which was decided in his favor; and plaintiff's various filings. He contends that plaintiff has not suffered harm from any delay because defendant alone continued to maintain the property, even though plaintiff was a partner and therefore was responsible for half of the costs. Additionally, he argues that he "was not time barred from asserting his rights to distribution in accordance with the dissolution statutes" because he provided documents to plaintiff and the receiver when the

---

[4] This amount equals fifty percent of the net proceeds from the property sale plus the $29,900 and $5000 previously awarded to plaintiff.

property was turned over to the receiver, and he sought reimbursement for the expenses related to winding up the partnership soon after they were incurred.

As an equitable doctrine, "[w]hether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court." Fox v. Millman, 210 N.J. 401, 418 (2012) (alteration in original) (quoting Mancini v. Township of Teaneck, 179 N.J. 425, 436 (2004)). Therefore, we review its application for an abuse of discretion. See id.

The doctrine of laches is "invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party." Knorr v. Smeal, 178 N.J. 169, 180-81 (2003). "[L]aches is not governed by fixed time limits but instead relies on analysis of time constraints that 'are characteristically flexible.'" Fox, 210 N.J. at 418 (citation omitted) (quoting Lavin v. Bd. of Educ., 90 N.J. 145, 151 (1982)). A judge may properly apply laches "when the delaying party had sufficient opportunity to assert the right in the proper forum and the prejudiced party acted in good faith believing that the right had been abandoned." Knorr, 178 N.J. at 181. The judge should consider "the length of the delay, the reasons for the delay, and the 'changing conditions of either or both parties during the delay.'" Ibid. (quoting Lavin, 90 N.J. at 152).

13

With these principles in mind, we are convinced that the record supports Judge Pugliese's decision to apply the doctrine of laches, precluding defendant from arguing he was entitled to a distribution of the net proceeds from the property sale in accordance with the dissolution provisions of the UPA.

In 2008, plaintiff sought judicial relief to gain access to the partnership's accounting records and obtain the proceeds for interest in the partnership. Two years later, the parties met with Judge Laskin and agreed to dissolve the partnership and equitably divide the partnership assets. At that point, defendant was certainly aware that distribution of the partnership assets would involve a review of the partnership's accounting records. However, even if defendant did not understand that to be the case at that time, he had clear opportunities to raise the instant issue and provide plaintiff with the partnership records in June 2011, when plaintiff filed the third lawsuit; in August 2012 at the arbitration; in November 2012, when Judge Meloni confirmed the arbitration award; and thereafter, when he appealed the confirmation.

Any litigation that ensued after the confirmation of the arbitration award does not excuse defendant's delay. For almost a year after the award confirmation, plaintiff's attorney requested that defendant comply with the terms of the award. Defendant's failure to do so prompted plaintiff to file the contempt

14

motion. Although we reversed the part of the order regarding the contempt issue, we decided it on procedural grounds and acknowledged Judge Pugliese's frustration with defendant and his attorney. We further addressed defendant's attempt to dispute the arbitration award, explaining that defendant had waited too long to raise the issue. Nevertheless, defendant filed another motion seeking relief from the arbitration award. The judge denied his request, and we affirmed because defendant wait almost three years to file this motion.

At no point during these proceedings did defendant provide plaintiff access to the partnership records. After plaintiff filed the third lawsuit, again seeking access to the partnership records, defendant waited more than six years to begin providing some of the requested records. We perceive no reasonable explanation for this delay, and we are not persuaded by his reliance on his former attorney's conduct as an excuse.

As a result of this unjustified delay, plaintiff has been prejudiced. "The primary factor to consider when deciding whether to apply laches is whether there has been a general change in condition during the passage of time that has made it inequitable to allow the claim to proceed." Nw. Covenant Med. Ctr. v. Fishman, 167 N.J. 123, 141 (2001). Plaintiff has waited years for defendant to start complying with court orders. We agree with Judge Pugliese that it would

be difficult for plaintiff to verify the accuracy of any of defendant's documents. The ability to scrutinize these documents has been severely diminished because of the significant passage of time.

To the extent we have not addressed defendant's remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3648-18T1